# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 05-3835 & 05-3836

DAVID JULIAN,

*Petitioner-Appellant,*

*v.*

KENNETH G. BARTLEY, Warden[1]

*Respondent-Appellee.*

———————

Appeals from the United States District Court
for the Central District of Illinois.
Nos. 05-CV-1076 & 05-CV-1077—**Michael M. Mihm,** *Judge.*

———————

ARGUED OCTOBER 19, 2006—DECIDED JULY 25, 2007

———————

Before RIPPLE, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* In this appeal of the denial of a habeas corpus petition, David Julian asks this court to consider whether the state court properly determined that his counsel did not provide ineffective assistance of counsel during plea negotiations when that counsel misinterpreted the Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and informed Julian that the maximum sentence he could receive would be thirty, rather than sixty years in prison.

---

[1] Pursuant to Fed. R. App. P. 43(C), we have substituted the new warden of the Pinckneyville Correctional Center where Julian is currently confined, for the former warden, Kenneth G. Bartley.

I.

On August 15, 2000, Julian and his state court trial counsel, Dennis Sheehan, met with Illinois State's Attorneys and the court to discuss a negotiated plea agreement. He was looking down both barrels of a double-barreled gun, having been indicted on May 3, 2000 for a robbery committed that same day, and indicted on May 18, 2000 for a robbery committed on April 30, 2000. At the hearing, the State summarized the plea disposition under which Julian would be sentenced to twenty-three year concurrent terms for the two armed robberies. Just before Julian started to enter his plea, the State mentioned that Julian was on supervised release for a previous armed robbery conviction. In response, the trial judge informed Julian that state law required that he serve his sentence for the armed robbery consecutively with any separate sentence imposed for a parole violation. At that point, Julian conferred with his attorney and then rejected the plea. According to Julian, his lawyer informed him that the Supreme Court had just recently issued a new opinion in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which required any fact that increases the penalty for a crime beyond the statutory maximum to be submitted to a jury and proved beyond a reasonable doubt. Julian testified that Sheehan informed him that because the indictments on the two charges of armed robbery did not mention the prior conviction, the longest sentence he could receive would be thirty years. According to Julian's testimony, Sheehan presented the information to him as a guarantee. According to Sheehan's testimony, Sheehan never guaranteed Julian a maximum sentence of thirty years. Sheehan did testify, however, that he recalled telling Julian that "since there wasn't an additional clause in the Bill of Indictment that made comment about his first conviction for armed robbery, that under those circumstances, it would seem to me that based upon a reading of *Apprendi*,

he couldn't get anything more than 30." (Tr. 3/17/03 at 25).[2] In any event, Julian rejected the plea and proceeded to trial on each of the two indictments—first a jury trial followed later by a stipulated bench trial. Unfortunately for Julian, Sheehan was only half right about the holding of *Apprendi*. It did indeed hold that any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, but it specifically exempted from this holding the fact of a prior conviction. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Julian proceeded to trial and was sentenced to forty-year concurrent terms.

After Julian was sentenced in the first trial, Sheehan filed an unsuccessful motion to reconsider the sentence, arguing that based on *Apprendi*, Julian should have received thirty years, at most. Several days later, at a sentencing hearing for the second conviction, Julian submitted a letter to the court that stated, in part:

> I want you to now bring up the *Apprendi vs. N. [sic] Jersey* as a factor in my sentencing as well as the fact that you stated to me that due to the states [sic] mishandling of the indictment in these cases that I've guaranteed myself a maximum of 30 years, per charge.

---

[2]  Because Julian's two habeas cases were not consolidated in the district court, the record on appeal consists of two identical volumes of pleadings and two identical supplemental volumes of state evidentiary hearing transcripts, one for each case. For some reason, although the records containing the pleadings are identical, they are not numbered identically. Consequently, for ease of reading, and to reduce confusion, this opinion will refer only to the pleadings of the record on appeal of district court case number 05-1077. The transcripts of the evidentiary hearing are identical in all respects and, therefore, transcript references can be found in either supplemental volume of the transcript.

(R. at10, Ex. D, p.3 & Ex. A, p.32-33, 39-40)[3]. The court did not review the letter, but it was entered into the record under seal, over the State's objection.

Julian filed timely direct appeals and motions for post-conviction relief that raised the issue of ineffective assistance of counsel. In those appeals, Julian argued that his attorney was ineffective when he advised Julian that he could not receive more than a thirty-year sentence because of limitations set forth in *Apprendi*. He also contended that he would have accepted the plea offer of twenty-three years had he known that his potential sentence could have exceeded thirty years.

During the evidentiary hearing held during the post-conviction proceedings, both Julian and Sheehan testified about the *Apprendi* issue. Sheehan's version of the facts differs from Julian's only in the level of certainty Sheehan provided regarding the thirty-year sentence. Julian described Sheehan's advice as a guarantee as shown in the following exchange:

> Q: And did Mr. Sheehan advise you what the absolute maximum sentence would be that you could receive?
>
> A: Yes, sir.
>
> Q: And what did he tell you the absolute maximum sentence you could receive would be on these cases?

---

[3] At the sentencing hearing, defense counsel informed the court that the defendant had prepared a written statement for the court, which included arguments that defense counsel did not believe were appropriate for him to argue to the court. The letter appears to be a letter of direction from Julian to defense counsel. (R. at 10, Ex. A., p.39-40). The trial judge allowed the letter to be made a part of the record, although he did not look at it.

A: 30 years.

Q: Did he cite any particular case that you remember in support of his statements to you?

A: Yes, sir.

Q: What was that?

A: The *Apprendi vs. New Jersey.*

Q: And what was your—from what he told you during these meetings on this issue, what was your understanding of that?

A: My understanding was that due to the way I was improperly—

Q: I'm sorry, let me cut you off. What did Mr. Sheehan tell you regarding that, to the best of your recollection, *Apprendi*?

A. He told me, due to the *Apprendi*, that I have guaranteed myself no more than 30 years.

(Tr. 3/13/03 at 6-7). Sheehan testified about the *Apprendi* advice as follows:

First, on direct examination the following exchange occurred:

Q: And did you ever advise or make a statement to Mr. Julian to the effect that because of this *Apprendi* Case, that he was guaranteed or that the most he could get was 30 years in the Department of Corrections?

A. No.

(Tr. 3/17/03 at 12). On cross-examination, he elaborated further:

Here is what I remember telling him about it. I remember saying to him that my reading of the *Apprendi*

Case indicated to me that since there wasn't an additional clause in the Bill of Indictment that made comment about his first conviction for armed robbery, that under those circumstances it would seem to me that based upon a reading of *Apprendi*, he couldn't get anything more than 30. That's basically what I told him.

(Tr. 3/17/03 at 25). On re-direct examination, Sheehan testified as follows:

Q:  . . . [D]id you ever tell Mr. Julian then that based on that case and based on your interpretation of that case [*Apprendi*], would be held here in the State of Illinois, that he was guaranteed to only get 40 [sic] years?

A:  . . . [T]he answer to that question is no. I indicated to him that it was for the Court to make a determination as to his penalty and certainly not myself.

(Tr. 3/17/03 at 31-32).

Julian's friend, Richye Herlihy, testified that Sheehan told her that Julian could get up to thirty years in prison, but no more. (Tr. 3/13/03 at 50).

Julian and Sheehan agree that, prior to the decision in *Apprendi*, at his first court appearance on May 3, 2000, both Sheehan and the trial Judge informed Julian that he was eligible for a term of up to sixty years. Julian testified, however, that Sheehan later informed him that *Apprendi* had altered the landscape and changed the maximum he could receive. (Tr. 3/13/03 at 45-46, 55).

The state post-conviction court denied Julian's request for post-conviction relief, finding clear evidence that both the court and Julian's counsel advised Julian that he was eligible for an extended term of up to sixty years. (R. at 10, Ex. H, p.1). Julian's appeal to the state appellate court

resulted in a similar conclusion (R. at 10, Ex. L), and the Illinois Supreme Court denied his petition to appeal (R. at 10, Ex. N).

On petition for a writ of habeas corpus, the district court below concluded that there was no clear and convincing evidence that the state court's factual determination—that Julian's counsel did not erroneously inform him that he could not receive a sentence greater than 30 years—was unreasonable based on the record. Our review of the district court's decision to deny the petition for writ of habeas corpus is de novo. *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir.), *cert. denied*, 126 S. Ct. 153 (2005).

## II.

Our review of this habeas petition, like all habeas petitions, is limited by the terms of the Antiterrorism and Effective Death Penalty Act (AEDPA). Habeas relief must not be granted unless the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In assessing the reasonableness of the state court's decision, the federal court assumes that the state courts' factual determinations are correct unless the defendant rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Our review of this case utilizes both prongs of the § 2254(d). We begin with a discussion of the state court's

fact-finding. The state post-conviction court's complete discussion of the evidence on this matter consisted of the following four sentences:

> Evidence was clear that Mr. Julian was advised by his attorney and by the court that he was eligible for an extended term of up to 60 years in the Illinois Department of Corrections. Mr. Sheehan did state that when discussing a plea negotiation offer by the state he [Sheehan] opined that the sentence might be 30 years. He never stated that that was the maximum sentence or that a sentence could not be longer. Mr. Julian knew, because both the court and his attorney told him, that he was eligible for an extended term.

(R. at 10, Ex. H, at p.1). The appellate court came to two conclusions based on the trial court's scant discussion. First, the appellate court concluded that "the postconviction court found that the defendant was advised both by his attorney and the trial court that he faced a maximum penalty of 60 years' imprisonment." Second, it concluded that "[t]he postconviction court found that Sheehan merely expressed his opinion concerning the effect of *Apprendi,* and did not guarantee that the defendant's sentence would not exceed 30 years." (R. at 10, Ex. L, p.7). In sum, the post-conviction appellate court's conclusion that Sheehan's counsel was not ineffective appears to be based on two distinct theories. The first is that Sheehan did not err. He correctly informed Julian that he could receive up to a sixty year sentence. The second is that because Sheehan merely expressed an opinion about the effect of *Apprendi*, and did not guarantee Julian thirty years, his misinformation about *Apprendi* did not constitute ineffective assistance of counsel.

The conclusion that the defendant was advised effectively both by his attorney and the trial court that he faced a maximum penalty of 60 years' imprisonment constitutes an unreasonable determination of the facts

in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1). It is true that, at one time, both Sheehan and the court advised Julian that the maximum sentence he could receive would be sixty years. Both of these admonishments, however, came before the *Apprendi* decision was released. There is no dispute that after the *Apprendi* decision Sheehan discussed the case with Julian and told him that the law had changed. Julian and Sheehan's testimony aligned on this point. *See* (Tr. 3/13/03 at 45-46); (Tr. 3/17/03 at 24-25): Julian testified that his lawyer's information changed after the *Apprendi* case was decided:

> Q: . . . [B]efore you received the first 40-year sentence, at any point did he tell you you could get over 30 years?
>
> Q: A long time before that, before he ever told me about the *Apprendi*.
>
> Q: So sometime between your first appearance and when he told you about *Apprendi*?
>
> A: Yes. After that, it was never an issue. he told me I couldn't get more than thirty years.

(Tr. 3/13/003 at 45). On re-cross-examination, Julian elaborated:

> Q: I just want to make sure I heard this correctly. Did I understand you to say, Mr. Julian, that at some point Mr. Sheehan did tell you that you could get 60 years and then afterwards he said you could only get 30 years based on *Apprendi*?
>
> A: Yes.
>
> Q: And that is—
>
> A: After he told me about the *Apprendi* and that I could get no more than 30 years, he never discussed an extended term again.

Q: Okay, so it did come up? It did come up, then, prior to your first trial with Mr. Sheehan that you could get 60 years? You are just saying that he then said something different after that, but again, prior to the first trial?

A: He told me a long time before my first trial, yes, that I could get an extended term. Then after he learned of the *Apprendi*, he told me that due to the *Apprendi*, a new Supreme Court ruling, I could get no more than 30 years. I have guaranteed myself no more than 30 years.

(Tr. 3/13/03 at 46).

Sheehan testified consistently with Julian as follows:

A: When we spoke about this case originally, and when I found out what his prior criminal record was, and that he was on parole for an armed robbery, I was telling him that he was eligible for the 60 year sentence.

Q: Okay. But you had also just answered me, that you couldn't specifically remember saying those words, in the context of that discussion, but you could get 60, correct?

A: That's right.

Q: So at some point it came up, but maybe not every time you discussed the possible sentence.

A: That's also correct.

* * *

Q: Did you ever mention the *Apprendi* case to Mr. Julian and what you believed it represented?

A: I remember having a brief discussion with him about it.

Q: Okay. And in that discussion, if you recall, do you recall telling him that it would preclude an extended term sentence in this case?

A: Here is what I remember telling him about it. I remember saying to him that my reading of the *Apprendi* Case indicated to me that since there wasn't an additional clause in the Bill of Indictment that made comment about his first conviction for armed robbery, that under those circumstances it would seem to me that based upon a reading of *Apprendi*, he couldn't get anything more than 30. That's basically what I told him.

(Tr. 3/17/03 at 23-25).

This is not, as the State asserts, a swearing match between Julian and Sheehan. And we need not redetermine credibility. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). The state court simply ignored a key piece of evidence that reconciled both Julian and Sheehan's testimony. The government cites several pages from the transcript which indicate that Sheehan informed Julian that he was eligible for a sixty year sentence. (Brief of the Appellee at 19-20, 21, 24), but each of these statements refers to information Sheehan gave to Julian before the *Apprendi* decision was released. Consequently, any admonishments that Julian received prior to *Apprendi* became moot in Julian's eyes after Sheehan informed Julian that *Apprendi* changed the playing field. The post-conviction court's determination that "Mr. Julian knew . . . that he was eligible for an extended term" was against the clear weight of the evidence and, therefore, an objectively unreasonable determination of undisputed facts. *See Ben-Yisrayl v. Davis,* 431 F.3d 1043, 1048 (7th Cir. 2005).

Even if it were not, in formulating its alternate theory, the post-conviction appellate court unreasonably applied the United States Supreme Court's clearly established law on ineffective assistance of counsel claims. Recall that the post-conviction appellate court's other (and perhaps primary) conclusion was that "Sheehan merely expressed his opinion concerning the effect of *Apprendi*, and did not guarantee that the defendant's sentence would not exceed 30 years." (R. at 10, Ex. L, p.7).[4] From this, the court could conclude that "Sheehan did not provide the defendant with ineffective assistance at trial." *Id.*

A state court must analyze a claim of ineffective assistance of counsel pursuant to the guidelines set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that a petitioner demonstrate first that counsel's performance was deficient in an objectively unreasonable manner, and, second, that the deficient performance resulted in prejudice. *Id.* at 687-88, 693. A habeas petitioner who brings an ineffective assistance of counsel claim under the AEDPA must demonstrate that the state court unreasonably applied *Strickland* in evaluating his claim of ineffective assistance of counsel. The state court's application of *Strickland* must be objectively unreasonable and not merely erroneous. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

---

[4] The appellate court's factual findings differ slightly from the brief factual findings of the post-conviction court. Nevertheless, the state appellate court can make its own factual determinations which are owed the same deference as a trial court's finding of fact. *Miranda v. Leibach*, 394 F.3d 984, 999 (7th Cir. 2005). *See also Sumner v. Mata*, 449 U.S. 539, 547 (1981) ("Section 2254(d) by its terms thus applies to factual determinations made by state courts, whether the court be a trial court or an appellate court.")

The *Strickland* test applies where a defendant challenges the legal assistance received during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Indeed the first prong of the *Strickland* test emanates from an earlier Supreme Court case in which the Court held that a defendant challenging a guilty plea based on ineffective advice from his lawyer must demonstrate that the advice was not within the range of competence demanded of attorneys in criminal cases. *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970).

This court previously has identified some of the specific criteria that constitute objectively reasonable representation in the context of advice concerning a plea agreement. A reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis before allowing the client to plead guilty. *Bethel v. United States*, 458 F.3d 711, 717 (2006), *cert. denied*, 127 S. Ct. 1027 (2007)*; Moore*, 348 F.3d at 241; *Barnes*, 83 F.3d at 939. The attorney need not be 100% correct in her prediction of the consequences of pleading guilty and of going to trial, as a mistake, in and of itself is not proof of deficient performance. *Moore*, 238 F.3d at 241; *Barnes*, 83 F.3d at 939-40. The leeway given counsel stems from the general concept that a court must start with the "presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). Because reasonable attorneys may have a great deal of disagreement about appropriate strategy or tactics, a defendant challenging the effectiveness of counsel must show more than that counsel made poor choices. *Woods v. McBride*, 430 F.3d 813, 821 (7th Cir. 2005), *cert. denied*, 127 S. Ct. 391 (2006). Consequently, although a mistaken prediction is not sufficient to show deficient performance, (*Barnes*, 83 F.3d at 940), in some cases it may be such a gross mischaracterization that it

provides a "strong indication of constitutionally deficient performance." *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999). A court may factor the magnitude of the error into its assessment of whether the legal advice was that of a reasonably competent attorney. *See McMann*, 397 U.S. at 769-71.

The state appellate court, therefore, was headed in the wrong direction when it determined that Sheehan did not provide ineffective assistance of counsel because he "merely expressed his opinion . . . and did not guarantee that the defendant's sentence would not exceed 30 years." (R. at 10, Ex. L, p.7). The only query we make is whether the attorney's actions in learning the facts, analyzing the law, and communicating the results of that analysis to the client, were objectively reasonable. *Moore*, 229 F.3d at 241. And so in *Moore*, where the attorney discussed the possible ramifications of the sentence with a client but did not have the relevant statute with him and was uncertain as to its effect, this court concluded that his conduct was objectively unreasonable, notwithstanding the fact that the attorney never identified the conclusion he reached or the advice ultimately given to the client. *Moore*, 348 F.3d at 241-42. Consequently, the appellate court's conclusion that because Sheehan provided an opinion rather than a guarantee, he could not have provided ineffective assistance of counsel is a non-sequitur. (R. at 10, Ex. L, p.7). What Sheehan told Julian about a thirty-year maximum for his sentence was clearly wrong and therefore objectively unreasonable. In fact one would be hard pressed to find a lawyer who guaranteed a client anything. Guarantees in the law are hard to come by, particularly in the topsy-turvy world of sentencing. Were we to constrain claims for ineffective assistance of counsel only to those who received guarantees from their lawyers, we surely would eviscerate the law regarding the right to effective counsel.

The first prong of the state court's *Strickland* analysis, therefore, should have focused not on whether Sheehan offered advice or a guarantee, but rather on whether Sheehan's advice was that of a reasonably competent defense lawyer.[5] In this case, it will be helpful to our assessment of Sheehan's analysis of the facts and law, and his efforts to communicate the results of his analysis to revisit the key facts leading up to the rejection of the plea. They are as follows:

On May 3, 2000 Julian was brought before a judge on charges that he had committed a robbery that same day. The judge advised Julian that the usual sentencing range for the offense was six to thirty years imprisonment, but that if Julian had "been convicted of the same or greater class offense within the past 10 years excluding any time spent in custody, that could be extended as high as 60 years." (R. at 10, Ex. L, p.1-2). Sheehan similarly advised Julian that his maximum sentence could be sixty years. (Tr. 3/17/03 at 10). Fifty-four days later, on June 26, 2000, the Supreme Court released its decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Seven weeks after that, on August 15, 2000, Julian and his counsel entered the plea hearing. At or before this hearing, Sheehan discussed

---

[5] The State contends that prior to the briefing in the appellate court Julian consistently alleged ineffective assistance of counsel based on counsel's advice, rather than a guarantee. Consequently, the State argues that Julian cannot now claim that counsel was ineffective for making an erroneous prediction. Our task, on review of this habeas petition, is to determine whether the state court properly applied *Strickland*. In the case of an ineffective assistance claim, the first prong of *Strickland* requires a court to analyze whether the attorney gave objectively reasonable advice, not whether he guaranteed an outcome or merely opined about a possible outcome. Julian thus correctly notes that the distinction is irrelevant under his theory of the case.

the effect of the *Apprendi* decision on Julian's sentence, and, Sheehan told Julian that under his "reading of the *Apprendi* case . . . since there wasn't an additional clause in the Bill of Indictment that made comment about his first conviction for armed robbery, that under those circumstances it would seem to me that based upon a reading of *Apprendi*, he couldn't get anything more than 30." (Tr. 3/17/03 at 25).

Of course, this reading of the *Apprendi* decision was wrong. *Apprendi* clearly held that "**Other than the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis supplied). Consequently, there was no need for the government to include an additional clause in the indictment that referenced Julian's prior conviction for armed robbery. *Apprendi*'s holding regarding prior convictions was not new. In *Jones v. United States*, 526 U.S. 227, 243, n.6 (1999), decided the year before *Apprendi*, the court noted, in a case construing a federal statute, that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* And the year before that, in *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998) the Supreme Court held that Congress could treat recidivism—that is, the fact of a prior conviction—as a sentencing factor rather than an element of the crime, and therefore it need not be set forth in the indictment. *Id.*

It is true, as the government notes, that the *Apprendi* opinion was fifty-three pages in length and contained two concurrences and two dissents. Nevertheless, had Sheehan

read only the syllabus or even just the one-sentence (thirty-nine word) holding of *Apprendi*, demarcated in the syllabus of the opinion by an italicized "*Held:*" he would have known, without any doubt, that the fact of a prior conviction need not be submitted to a jury and proved beyond a reasonable doubt.[6] The majority opinion contains a lengthy discussion regarding the exception for the "fact of a prior conviction" which includes a discussion of why this particular type of fact is particularly reliable and relevant and a clear announcement that the holding of *Almendarez-Torres*, 523 U.S. 224 (1998) would stand. *Apprendi*, 530 U.S. at 487-90. Following this discussion, the court summarizes its holding, stating, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Despite the fact that there were two concurrences and two dissents, the majority opinion drafted by Justice Stevens was not a fractured opinion in which only portions of the opinion held a majority vote. Five members of the court agreed with the whole of the majority opinion in *Apprendi*. In short, the holding of *Apprendi* is clear on first, second, or third glance, that the fact of a prior conviction need not be submitted to a jury and proved beyond a reasonable doubt. To his credit, Sheehan testified that he read *Apprendi* before advising Julian, and in this respect his efforts surpassed those of the attorney in *Moore*, who confessed that he did not have the statute with him when providing the advice and acknowledged that he was uncertain as to

---

[6] Although the Supreme Court admonishes readers that the syllabus "constitutes no part of the opinion of the court" it does provide a convenient synopsis of the opinion and its holding, and can quickly direct a reader to the relevant portion of the full opinion.

its effect. Nevertheless, given the clear exception for prior convictions announced at several points in the majority opinion of *Apprendi* (*see Apprendi*, 530 U.S. at 476, 488, 490), Sheehan's reading of *Apprendi* in this case simply cannot constitute an objectively reasonable analysis of the law and his counsel therefore was deficient.[7] In sum, by focusing on Sheehan's guarantee rather than the analysis required by *Strickland*, the state post-conviction court's application of governing federal law was objectively unreasonable.

None of that matters, however, if Julian cannot show that but for his lawyer's advice, he would have taken the plea offer. Because the district court upheld the state court conclusion that Sheehan did not provide erroneous information, it did not have the opportunity to consider whether the ill advice prejudiced Julian. Although we could remand the issue to the district court so that it might address this issue, the district court would merely review the same post-conviction court record that we have already scoured for evidence of prejudice. Because our review is de novo and the issue has been fully briefed, efficiency dictates that we resolve the question here. *See e.g.*, *Amcast Indus. Corp. v. Detrex Corp.,* 2 F.3d 746, 749-50 (7th Cir. 1993) (deciding an issue for the first time on appeal where the matter has been fully briefed and the appellate court's review is plenary such that the district

---

[7] By coming to this conclusion we do not mean to disparage generally Mr. Sheehan's skills as lawyer. Defense lawyers often work long hours, for little money, at times for more clients than they can reasonably handle. These conditions can lead to error. Mr. Sheehan, like all lawyers at some point in their career, erred. In this case, the error deprived Julian of effective assistance of counsel. Our review of the record indicates that but for this error, Mr. Sheehan admirably represented his client below.

judge's view could have no effect on review by the court of appeals).

To meet the second of the *Strickland* prongs—prejudice—the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. The chances of prejudice need be only better than negligible. *Canaan v. McBride*, 395 F.3d 376, 386 (7th Cir. 2005). In the context of plea agreements, the prejudice prong focuses on whether the deficient information was the decisive factor in a defendant's decision to plead guilty or to proceed to trial. *Hill*, 474 U.S. 58-59; *Moore*, 238 F.3d at 241; *Barnes*, 83 F.3d at 940. It is only in this prejudice context that consideration of advice versus a guarantee warrants discussion. The strength of an attorney's prediction—that is whether it was billed as a guarantee, advice, belief, or guess goes toward determining whether the attorney's statements were the decisive factor in the defendant's decision to take a plea or opt for trial. Obviously a guarantee of a particular sentence might be more likely to affect a decision to take a plea or go to trial than an attorney's mere advice couched in all of the usual disclaimers that attorneys are trained to assert.

Julian testified that he based his decision to go to trial on the information provided by Sheehan: "I understood that Mr. Sheehan told me I couldn't get more than 30 years, and with the time I was being offered, it wasn't very much of a difference, seeing as how there was little extra added to it that put me in a position that I might as well take my chances since I couldn't have gotten more than 30 years anyway." (Tr. 3/13/03 at 42). During direct examination, the following exchange occurred:

Q:  Was your decision [not to take the plea and to go
    to trial] based at least in part on your belief that
    you would get no more than 30 years?

A:  Sure.

Q:  Had you been aware that you could have gotten
    more than 30 years, in fact anywhere up to 60
    years, would that have affected your decision to go
    to trial or not?

A:  Most definitely. I would have taken the 23, or the
    offer.

Q:  And so your decision was based on information Mr.
    Sheehan provided to you—

A:  Yes.

Q:  —regarding that 30-year sentence?

A:  Yes.

(Tr. 3/1/3/03 at 7).

The information Sheehan conveyed was "precisely the
type of information that is likely to impact a plea decision."
*Moore*, 348 F.3d at 242-43. In finding this, we need not
disrupt the district court's finding that Sheehan advised,
but did not guarantee Julian a thirty-year sentence. Even
assuming that Sheehan merely advised Julian that he
believed that the maximum sentence Julian could receive
was thirty years of incarceration, that legally erroneous
advice seems likely to have altered the outcome. The
government offered to recommend a sentence of twenty-
three years. Under this scenario Julian was faced with the
following choice: take the prosecutor's recommendation of
twenty-three years or take a gamble and go to trial where
he might be exonerated and go home a free man or he
might face up to thirty years in prison. Julian believed he
was only risking seven additional years for a chance at

acquittal (the difference between the twenty-three the prosecutor offered to recommend and the thirty to which he could be sentenced after trial). In actuality, Julian was risking thirty-seven years for the chance at acquittal (the difference between the twenty-three the prosecutor offered and the sixty years to which he could be sentenced after trial). To gamble with seven years for the slim chance of acquittal might be a reasonable calculus for some. It is hard to imagine, however, that any reasonable defendant would be willing to risk thirty-seven years for the remote chance of acquittal. After all, sixty years is a life sentence for any defendant, particularly one who, like Julian, was thirty-eight at the time of sentencing.

In *Moore* we found prejudice where the lawyer mistakenly doubled the sentence at risk when advising the client to take a plea. *Moore*, 348 F.3d at 242-43. In that case Moore's counsel failed to inform himself, and hence his client, about a change in the law critical to his client's plea decision. As a result, Moore's counsel informed him that he was facing a choice between ten years if he pled guilty and between twenty-two and twenty-seven years if he was convicted at trial. *Id.* at 242. In actuality, Moore was facing a choice between ten years if he took the plea and only twelve and a half to fifteen years if convicted at trial. *Id.* The court concluded that "that difference nearly doubled the amount of time he would face if he proceeded to trial, and that is precisely the type of information that is likely to impact a plea decision." *Id.* at 242-43. Noting the record evidence, the fact that Moore altered his plea after being given the incorrect information, and the severity of the misinformation, the court concluded that but for the erroneous advice, Moore would not have pled guilty. *Id.* at 243.

Although this court has stated that a "mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice," (*United States*

*v. Fudge*, 325 F.3d 910, 924 (7th Cir. 2003)), we are not faced with a mere allegation without more. In this case, as in *Moore*, we are faced with several pieces of evidence indicating that, but for the ill-advice, Julian would have taken the plea. First, as we just noted, Julian testified that he would not have gone to trial but for the misinformation. Second, Julian, like Moore, altered course at the last minute just after receiving the erroneous information. Third, the information provided by Julian's attorney grossly misstated the risk of going to trial. Thus just as in *Moore*, we have testimonial evidence, a history of the plea discussions, and the type of mis-information likely to impact a plea. *Id.* at 243.

The State attempts to chip away at Julian's prejudice showing by citing several cases which rejected particular pieces of evidence presented to prove prejudice. These cases, however, merely comment on the insufficiency of solitary pieces of evidence—a naked declaration that but for the erroneous advice, the defendant would have altered his choice to take a plea or go to trial; a third party affidavit stating the same; or after-the-fact evidence. *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) (self serving statement that the defendant would have accepted the plea insufficient to demonstrate prejudice); *Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998) (noting that affidavit by defendant's parents stating that he would have rejected the plea was, by itself, insufficient evidence of prejudice, but remanding for further evidentiary hearing); *Johnson v. Duckworth*, 793 F.2d 898, 902 n.3 (7th Cir. 1986) (court, in footnote dicta casting doubt on after-the-fact testimony by defendant that he would have taken a plea). In none of these cases did the court consider a package consisting of testimonial evidence, a history of plea discussion, and the nature of the misinformation as was presented both in this case and in *Moore*, 348 F.3d at 242-43. Julian need not demonstrate

that his counsel's deficient conduct more likely than not altered the outcome in the case. *Strickland*, at 693. He need only demonstrate that the chances of prejudice were better than negligible. *Canaan*, 395 F.3d at 386. This he has done.

The decision of the district court denying the writ of habeas corpus is reversed. Julian asks this court to order the State to put forth the original plea offer of two, twenty-three year concurrent terms of incarceration. The Supreme Court has announced that where there has been a finding of ineffective assistance of counsel in a § 2255 proceeding, the remedy "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interest" including the competing interest of preserving society's interest in the administration of criminal justice. *United States v. Morrison*, 449 U.S. 361, 364 (1981). We do not think that requiring specific performance of the plea agreement is the appropriate remedy here. In this case, the State had no hand in denying Julian his Sixth Amendment right to effective assistance of counsel, and Julian never actually accepted the terms of the original plea offer. *But cf. Nunes v. Mueller*, 350 F.3d 1045, 1057 n.9 (9th Cir. 2003) (directing state to offer the original plea despite the fact that defendant had not actually accepted the plea). We do not mean to imply that a court must order a new trial rather than impose the terms of the original plea offer any time these particular set of facts arise. A federal court has broad discretion in conditioning a judgment granting habeas relief (*Gilmore v. Bertrand*, 301 F.3d 581, 582 (7th Cir. 2002) (citing *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987))) and in doing so must consider the totality of the facts presented. In this case we believe that those facts warrant retrial. Of course the State is free to propose a plea agreement in lieu of trial as it sees fit. Consequently, the State shall have 120 days from the date of the

issuance of this opinion to release or retry the petitioner, Julian.

A true Copy:

      Teste:

                  _____

                 *Clerk of the United States Court of*
                 *Appeals for the Seventh Circuit*