NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued August 4, 2009
Decided August 17, 2009

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 09-1650

| | |
|---|---|
| ANDREW W. WARFIELD, | Appeal from the United States District Court |
| *Petitioner-Appellant*, | for the Western District of Wisconsin. |
| | |
| *v.* | No. 08-cv-477-slc |
| | |
| GREG GRAMS, | Barbara B. Crabb, |
| *Respondent-Appellee*. | *Chief Judge*. |

**O R D E R**

A Wisconsin jury found Andrew Warfield guilty of hostage-taking and kidnapping based on a theory that those crimes were the "natural and probable consequence" of his admitted participation in a conspiracy to commit armed robbery.  Warfield filed a federal habeas petition arguing that his convictions are insufficiently supported by the trial evidence, and therefore, unconstitutional.  The district court denied Warfield's petition but granted him a certificate of appealability with respect to one question: whether the state court reasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979), in concluding that the evidence was sufficient to support his hostage-taking and kidnapping convictions.  The district court refused to grant Warfield a certificate on the argument he attempts to pursue in this appeal—that his convictions violate his substantive due-process rights.   Because the

district court properly declined to grant a certificate of appealability on this issue, and because Warfield has not shown that his convictions are contrary to or based on an unreasonable application of federal law, *see* 28 U.S.C. § 2254(d)(1), we affirm.

**Background**

The state did not provide the transcripts with the record it filed in response to Warfield's habeas petition. Nor did Warfield's counsel tender the transcripts to the district court, although he acknowledged at oral argument that he had a copy of them in his possession. The following undisputed facts are taken from the factual recitation set forth in the Wisconsin Court of Appeals's decision affirming Warfield's convictions.

In the pre-dawn hours of February 20, 2005, five or six masked, armed gunmen broke into the Kenosha home of Nora Nieves and James Terrell. The couple was asleep in the house along with six children—Nieves's three sons, Mikhail (who at the time was 17 years old), Malcolm (14), and Ronnie (5); Terrell's son, James, Jr. (13); and Terrell's two grandsons, Obtavious and William (both 6). Nieves and Terrell were awakened by three of the gunmen, who forced them to lie back down at gun point. They bound Terrell's wrists and ankles with duct tape and warned him to "keep your eyes closed and nobody will die." While one gunman stayed with Terrell, the other two forced Nieves downstairs. One of the gunmen told her that he knew she worked at a check-cashing store and that she could disarm the store's alarm. He said that the intruders intended to take her to the store and make her open the safe for them. He ordered her to dress and threatened to kill her family if she did not cooperate.

Meanwhile, the remaining intruders went about restraining the children. James, Jr., who was sleeping on a fold-out couch with Obtavious and William, awoke to a hand over his mouth. A masked man told him to be quiet, asked how many people were in the house, threw a blanket over the boys' heads, and then directed his partners—also masked—to search the house. One of them found Ronnie, brought him to the couch, and forced him under the blanket. Another, finding Mikhail asleep in the basement, held a gun against Mikhail's neck as three or four of the men bound the boy's hands and ankles with duct tape and tied his wrists to his ankles. Two men pointed guns at Mikhail as he was bound, and one cocked his gun and threatened to shoot him if he moved. Upstairs, Malcolm awoke when the overhead light in his bedroom came on. He looked up and was hit in the eye with what he thought was a gun. A masked man ordered Malcolm to lie face down, bound his hands and ankles with duct tape, pulled a hat over his eyes, and carried him to the basement.

After the children were bound, Nieves heard one of the intruders yell "po po" — a slang term for police. The intruders fled. The police, who had been patrolling nearby, followed four sets of footprints in the snow from the house to a nearby garage, where they apprehended Warfield and three other men. They ultimately apprehended six men in connection with the crime.

Warfield signed a statement confessing that he agreed with five acquaintances to drive from Chicago to Kenosha in two cars to "rob some Mexicans." According to his statement, he thought they were going to a house where one of his codefendants knew someone who had marijuana. Warfield said he went with the group because he expected to be paid with money or marijuana. He thought the others were armed and saw them put on gloves when they got out of the car. Warfield said that he stayed in the car to act as a lookout and to provide the getaway, but when he saw the others run out of the house he got out of the car and ran too.

Warfield was charged with armed burglary, *see* WIS. STAT. § 943.10(2)(a), conspiracy to commit armed robbery, *id.* § 943.32(2), child abuse, *id.* § 948.03(2)(b), kidnapping, *id.* § 940.31(1)(b), and seven counts of hostage-taking, *id.* § 940.305(1). At trial the prosecution offered some evidence that Warfield entered the house with the others, but because that evidence was relatively weak, it pursued a vicarious liability theory of guilt on the kidnapping and hostage-taking charges. The jury was instructed that under Wisconsin law a member of a conspiracy is guilty of any crime committed by the other members if the crime is a "natural and probable consequence of the intended crime." *See* WIS. STAT. § 939.05(c). The jury was told that such circumstances exist if "in the light of ordinary experience," the crime "was a result to be expected, not an extraordinary or surprising result." Warfield was convicted on all counts.

In his direct appeal, Warfield argued that the state did not present sufficient evidence to prove that hostage-taking and kidnapping were reasonably foreseeable consequences of the conspiracy to commit armed robbery. The Wisconsin Court of Appeals disagreed, noting that a jury could conclude that those crimes were foreseeable given the number of conspirators, their choice to drive in two separate cars, and the fact that the armed group entered the house in the middle of the night. The court upheld Warfield's convictions and the Wisconsin Supreme Court denied his petition for review.

Warfield filed a federal habeas petition arguing that his convictions are contrary to federal law, *see* 28 U.S.C. § 2254(d)(1), because, he said, they were not supported by the evidence. Relying on the Supreme Court's decision in *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946), Warfield argued that he could not be liable for the hostage-taking and

kidnapping committed by his coconspirators because, according to him, those crimes were not "reasonably foreseen as a necessary or natural consequence of the unlawful agreement." Warfield argued that the evidence at his trial was insufficient to meet what he describes as "the Due Process requirements of *Pinkerton . . .* concerning vicarious liability of coconspirators."

The district court denied Warfield's habeas petition. It determined that the state appellate court properly applied *Jackson v. Virginia*, 443 U.S. at 319, where the Supreme Court held that a habeas petitioner is not entitled to relief on a sufficiency-of-the-evidence challenge if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The district court noted that Warfield's convictions comported with due process because, as the state appellate court found, the jury reasonably could have inferred from the trial evidence that Warfield was in a position to foresee his codefendants' actions.

## Analysis

We review de novo the district court's decision to deny Warfield's habeas petition. *See Julian v. Bartley*, 495 F.3d 487, 491 (7th Cir. 2007). To prevail, Warfield must show that the underlying state-court decision was contrary to or involved an unreasonable application of federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Perry v. McCaughtry*, 308 F.3d 682, 688 (7th Cir. 2002).

### A.      Warfield Waived the Only Argument Certified for Appeal

As noted above, the district court granted Warfield a certificate of appealability only with respect to the question whether the state appellate court reasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979), in concluding that the trial evidence was sufficient to support Warfield's hostage-taking and kidnapping convictions under a theory of vicarious liability. The state did not include the trial transcripts along with the state-court record it filed in response to Warfield's petition. Apparently the state expected the district court to evaluate the sufficiency of the trial evidence by relying on the summary of facts contained in the decision of the Wisconsin Court of Appeals. At oral argument Warfield's attorney conceded that he never objected to the state's failure to produce the transcripts and that he had a copy of the transcripts in his possession and never tendered them. Additionally, counsel acknowledged that he did not provide the district court with the transcripts partly because he thought it was better for his client to limit the facts to those he included in summary form in his brief. Because Warfield's attorney made a tactical decision not to

submit the transcripts to the district court, he has waived any argument that the district court erred in resolving his petition without reviewing the trial transcripts. *See United States v. Farmer*, 543 F.3d 363 (7th Cir. 2008) (noting that a strategic decision to forego an argument constitutes waiver); *United States v. Hill*, 552 F.3d 541, 545 (7th Cir. 2008) (explaining that "a waiver is a knowing and intentional relinquishment of a right").

Nor has Warfield's attorney developed a sufficiency-of-the-evidence argument in his briefs to this court. The briefs scarcely reference *Jackson v. Virginia*, the case which the certificate of appealability puts at the center of this appeal. Because has not argued that the decision of the Wisconsin Court of Appeals is contrary to or rests on an unreasonable application of *Jackson*, *see* 28 U.S.C. § 2254(d), he has waived the only argument properly before this court. *See Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 677-78 (7th Cir. 2009) (noting that arguments not developed in briefs are waived).

**B.      Warfield's *Pinkerton*/Due-Process Argument**

In lieu of pursuing the straightforward sufficiency-of-the-evidence inquiry that the district court certified for appeal, Warfield pursues his less than clear due-process argument, which falls outside the certificate's scope. Although under some circumstances this court may expand a certificate of appealability when the pertinent issue is first raised in the briefs, *see, e.g., Ouska v. Cahill-Masching*, 246 F.3d 1036, 1046 (7th Cir. 2001), it would do so only if Warfield had made a substantial showing that his due-process rights have been violated, *see* 28 U.S.C. § 2253(c)(2). Warfield has not approached that necessary showing here.

Warfield argues that the due-process clause requires the state to show something more than *Pinkerton*'s formulation that the coconspirators' crimes were "reasonably foreseen as a necessary or natural consequence" of the conspiracy. *See Pinkerton*, 328 U.S. at 647-48. He relies on *United States v. Mothersill*, 87 F.3d 1214, 1218 (11th Cir. 1996), where the Eleventh Circuit held that due-process concerns limit coconspirator liability to those "who played more than a 'minor' role in the conspiracy, or who had actual knowledge of at least some of the circumstances and events culminating in the reasonably but unintended substantive crime." (quotation omitted). Warfield argues that as a (self-described) minor participant in the conspiracy with no actual knowledge of his coconspirators' plan to restrain or kidnap their victims, he cannot constitutionally be held liable for his coconspirators' crimes.

This argument is without merit. First, the basic premise of *Pinkerton* liability is that a coconspirator may be liable for his confederates' crimes regardless of his knowledge of

the plan—it is enough that the crimes are reasonably foreseeable to someone in his position. *Pinkerton*, 328 U.S. at 6497-48; *see also United States v. Walls*, 225 F.3d 858, 864-65 (7th Cir. 2000). Second, Warfield's reliance on Eleventh Circuit caselaw does not advance his cause; he is entitled to habeas relief only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established federal law *as determined by the Supreme Court*." 28 U.S.C. § 2254(d)(1) (emphasis added); *Julian*, 495 F.3d at 492. Warfield points to no Supreme Court decisions that come close to articulating his due-process rationale, and in fact he concedes that "the law has not yet developed clear and cogent standards" for the rule he suggests. That effectively ends the inquiry.

Because Warfield has not made a substantial showing that his due-process rights have been violated, we decline to expand the certificate of appealability to include his due-process argument. The judgment of the district court is **AFFIRMED**.