In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1961

LANCE FOSTER,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 09-C-415 — **Rudy Lozano**, *Judge.*

ARGUED MAY 30, 2013 — DECIDED OCTOBER 30, 2013

Before SYKES and HAMILTON, *Circuit Judges*, and
STADTMUELLER, *District Judge.*[*]

STADTMUELLER, *District Judge*. The appellant, Lance Foster,
was charged with distributing crack cocaine and a separate
conspiracy-to-distribute charge. Against the advice of his

[*] The Honorable J.P. Stadtmueller of the Eastern District of
Wisconsin, sitting by designation.

appointed counsel, Visvaldis Kupsis, Mr. Foster rejected two proposed plea agreements, both of which would have resulted in a sentence of close to twenty years imprisonment. Atty. Kupsis was particularly concerned with this decision, because Mr. Foster faced a possibility of a life sentence, if he was convicted of the conspiracy charge at trial. Undeterred, Mr. Foster decided to take the case to trial. Only ten days before his trial was scheduled to begin, the Government filed an information, pursuant to Title 21, Section 851, of the United States Code, stating that Mr. Foster had a prior felony drug conviction. The effect of filing this information was to increase the mandatory minimum penalty on both the distribution and conspiracy counts from 10 to 20 years. Atty. Kupsis had not anticipated that the Government would file the information, nor had he advised Mr. Foster that such was a possibility. After receiving notice of the information, Atty. Kupsis suggested to Mr. Foster that they attempt to revive one of the earlier proposed plea agreements. Mr. Foster refused, stating that "20 years is life," apparently referring to the approximate length of imprisonment attendant in each of the prior proposed agreements. Thus, trial went forward, and—quite to his surprise—Atty. Kupsis successfully defended Mr. Foster against the conspiracy charge. The jury, however, still voted to convict him on the distribution count. The Section 851 information triggered a higher mandatory minimum penalty of 20 years on that count, and thus the district court sentenced Mr. Foster to 20 years imprisonment. This result effectively made the trial inconsequential, as it was likely that Mr. Foster would have received the same (or a slightly lower) sentence, had he agreed to plead guilty to the conspiracy charge. Thus, he filed a

Section 2255 motion, arguing that Atty. Kupsis provided constitutionally ineffective assistance of counsel, due to his failure to anticipate and report to Mr. Foster the potential for a Section 851 information. The district court held an evidentiary hearing on Mr. Foster's motion, and ultimately held that Mr. Foster could not establish that he was prejudiced by Atty. Kupsis' representation, because he expressed an unwillingness to accept any of the plea agreements offered to him. Mr. Foster appealed, but this Court agrees with the district court's assessment, and therefore affirms its denial of Mr. Foster's motion.

## I. Background

A grand jury returned a twenty-two count indictment against fourteen defendants, including Mr. Foster, on October 21, 2004. The indictment charged Mr. Foster with two separate counts: Count Two, conspiracy to possess with intent to distribute fifty grams or more of crack cocaine, five kilograms or more of cocaine, and marijuana, in violation of Title 21, Section 846, of the United States Code (we will refer to this count as the "conspiracy charge"); and Count Seven, distribution of fifty grams or more of crack cocaine, in violation of Title 21, Section 841(a)(1), of the United States Code (the "distribution charge").

After Mr. Foster was arrested, Atty. Kupsis was appointed to represent him. At this early stage of the proceedings, Mr. Foster was subject to a mandatory minimum of ten years, and faced a maximum term of life on the conspiracy charge. Atty. Kupsis had reviewed the evidence, and believed it was very strong and would likely lead to a conviction. Thus, he advised

Mr. Foster not to go to trial, as doing so would result in a conviction on the conspiracy charge and a potential life sentence. Instead, Atty. Kupsis suggested that Mr. Foster should cooperate with the Government and plead guilty to secure a lower sentence.

Mr. Foster initially agreed to do so, and the parties entered a proposed plea agreement on February 11, 2005. The terms of that agreement required that Mr. Foster plead guilty to the conspiracy charge and assume responsibility for more than 1.5 kilograms of crack cocaine. Taking responsibility for that amount of crack cocaine would have strongly affected the base level for Mr. Foster's offense, raising it to 38—the highest base level for drug crimes under the sentencing guidelines. The plea agreement also called upon Mr. Foster to agree to an additional two-level enhancement for possession of a dangerous weapon. However, the base level would be reduced by three points for his acceptance of responsibility. Combined with Mr. Foster's level II criminal history category, this offense level would result in a guideline range of 235 to 293 months imprisonment. The agreement also anticipated Mr. Foster's cooperation, which might ultimately have led the government to file an appropriate motion for a reduced sentence.

The plea agreement fell apart shortly before the plea hearing, when Mr. Foster had a change of heart and told Atty. Kupsis that he wanted to plead guilty to the possession charge, as opposed to the conspiracy charge. The Government was willing to allow this change only under the condition that Mr. Foster accept the same drug quantity and weapons enhancement proposed in the initial agreement. Mr. Foster would not agree to do so, and instead told Atty. Kupsis that he would go

to trial even if he faced life imprisonment. Thus, he refused to enter this first offered agreement.

But all was not lost: the Government offered a second proposed agreement to Mr. Foster on September 1, 2006. This new proposed agreement would have allowed Mr. Foster to plead to the distribution charge, but still required him to accept responsibility for distribution of 1.5 kilograms of crack cocaine and the weapons enhancement. Nonetheless, the agreement would have capped Mr. Foster's term of imprisonment at 240 months, and the Government would have agreed to recommend a 235 month sentence. Atty. Kupsis even believed that he may have been able to persuade the judge to impose a sentence closer to 210 months, and informed Mr. Foster of that fact. Mr. Foster still would not agree, though, because he continued to refuse to stipulate to the drug quantity and weapons enhancement. The Government likewise refused to cap Mr. Foster's sentence unless he admitted those facts. Thus, once again, the Government's proposal fell through.

Trial approached quickly after that second proposed agreement, and ten days before trial, the Government filed a Section 851 information, stating that Mr. Foster had a prior felony drug conviction for possession of cocaine. This information increased Mr. Foster's mandatory minimum penalty on both charges from ten years to twenty years.

The Government's filing apparently caught Atty. Kupsis somewhat off guard—the Government had not informed him of the potential that they would file it, nor had Atty. Kupsis discussed the potential with Mr. Foster. But, when he approached Mr. Foster to discuss the significance of the informa-

tion, Mr. Foster had little interest in changing course. Atty. Kupsis suggested that he may still be able to secure a plea agreement with the Government, but Mr. Foster refused. Atty. Kupsis explained the implications of both the information and of going to trial: that Mr. Foster would almost certainly be convicted of at least the possession charge, thus facing a mandatory minimum of twenty years imprisonment, and further placed himself at risk of a life sentence if convicted of the conspiracy charge. This rationale did not prevail, though, and Mr. Foster reiterated his decision to go to trial. In doing so, he told Atty. Kupsis that "20 years is life," apparently intoning that entering a plea agreement carrying a likely twenty year sentence would not be different to him than receiving a life sentence.

The case eventually went to trial, and Atty. Kupsis was surprisingly successful. The jury acquitted Mr. Foster on the conspiracy charge, but convicted him of the possession charge. This result was positive for Mr. Foster in multiple ways. First, of course, he no longer faced a potential life sentence. Additionally, likely due to the facts established at trial, his presentence report found him responsible for distributing only 127.3 grams of crack cocaine—much less than the 1.5 kilograms the proposed agreements would have required him to admit to. Seemingly for the same reason, the presentence report also did not include a weapons enhancement, which Mr. Foster would have been subject to under the proposed agreements. This resulted in Mr. Foster's base offense level being much lower: only 32, with a guideline imprisonment range of 135 to 168 months.

Of course, that lower base offense level was of little consequence, as the Section 851 information activated a mandatory minimum sentence of twenty years. The district court eventually imposed just that, sentencing Mr. Foster to 240 months imprisonment. Mr. Foster appealed that judgment, arguing that the district judge should have waited to sentence him until after the new 2007 version of the sentencing guidelines went into effect; the Seventh Circuit disagreed with that position, and affirmed his conviction.

Thereafter, Mr. Foster filed a Section 2255 motion to alter, amend, or vacate, his judgment of conviction. The district court reviewed that motion and dismissed most of its claims. However, it did not dismiss Mr. Foster's claim that Atty. Kupsis provided ineffective assistance of counsel to him.

In that claim, Mr. Foster asserted that Atty. Kupsis's representation was ineffective, because he failed to advise Mr. Foster of the potential for a Section 851 information. Under Mr. Foster's theory, had Atty. Kupsis informed him of that potential, and its import, he would have agreed to plead guilty.

The district judge held a hearing on that issue, at which both Mr. Foster and Atty. Kupsis testified. Mr. Foster testified in support of his motion for relief. To begin, he testified that Atty. Kupsis had failed to tell him about the second proposed agreement or adequately explain the benefits of either of the proposed agreements. He also testified that he would not have gone to trial if he had known about the potential for a Section 851 information. In such a case, according to Mr. Foster's testimony at the evidentiary hearing, he would have chosen to take the plea agreement, instead.

Atty. Kupsis also testified, and was forthcoming with the district court about his failure to inform Mr. Foster about the potential for a Section 851 information. He also testified that he had provided Mr. Foster with a copy of the second proposed agreement and had explained the benefits of accepting a plea agreement and avoiding trial.

Given this conflicting testimony, the district court was required to make a credibility determination, and found that Atty. Kupsis' testimony was more credible than Mr. Foster's. The district judge stated that Mr. Foster's testimony was not credible, specifically in relation to whether Atty. Kupsis had offered appropriate advice on whether Mr. Foster should plead guilty. The district judge found that Mr. Foster's testimony was self-serving and unsupported by other evidence. Atty. Kupsis, on the other hand, testified against his own interest in admitting that he had not alerted Mr. Foster to the possibility of a Section 851 information, and the district court found him to be, generally, a more credible witness. Therefore, the district court accepted Atty. Kupsis' testimony on his communications with Mr. Foster over Mr. Foster's account of the events.

Based upon that finding, the district court decided that Mr. Foster could not satisfy the prejudice prong of his ineffective assistance claim, and therefore denied Mr. Foster's Section 2255 motion. More specifically, the district court found that Mr. Foster would have refused to plead guilty, even if Atty. Kupsis had notified him of the potential for a Section 851 information. The district court determined that Mr. Foster's sentiment that "20 years is life" evidenced his unwillingness to accept a plea agreement that would have likely yielded a sentence of around twenty years. Given that there had never been a plea agree-

ment on the table that would have exposed Mr. Foster to an initial sentence of substantially less than twenty years, the district court found that Mr. Foster's unwillingness to plead guilty was of his own making. In other words, his choice was not based upon Atty. Kupsis' error, and Mr. Foster would still have refused to plead guilty, even if he had known about the potential of a Section 851 information. On that basis, the district court found that Mr. Foster could not establish that he was prejudiced by Atty. Kupsis' actions. Therefore, his ineffective assistance of counsel claim would not lie, and the district court dismissed Mr. Foster's Section 2255 motion.

Mr. Foster appealed that decision to this court.

## II. Discussion

We review the district court's findings of fact for clear error and its conclusions on issues of law *de novo*. *Sorich v. United States*, 709 F.3d 670, 673 (7th Cir. 2013).

Here, the district court made factual findings related to the relative credibility of Atty. Kupsis' and Mr. Foster's statements. It credited Atty. Kupsis' statements, and accordingly found the following relevant facts: first, that Atty. Kupsis informed Mr. Foster of both proposed agreements and explained the benefits of accepting those agreements to him; second, that Mr. Foster refused to accept the drug weight and weapon enhancement required by both proposed agreements; and, third, that Mr. Foster clearly stated to Atty. Kupsis that he viewed a twenty year sentence as being practically the same as a life sentence.

We cannot find any error—let alone any clear error—in those findings of fact. Nor does Mr. Foster argue that any such

errors exist. Thus, it is on that factual basis that we must review the district court's denial of Mr. Foster's Section 2255 motion.

Turning to that analysis, we begin by noting the two elements of an ineffective assistance claim. To succeed on a claim that counsel's ineffective assistance led him to reject the Government's plea offers, Mr. Williams must show not only that Atty. Kupsis acted in error, but also that—had Atty. Kupsis provided competent advice—there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted it, and that the conviction or sentence or both would have been less severe than the judgment imposed. *Lafler v. Cooper*, – U.S. —, 132 S. Ct. 1376, 1384–85 (2012).

Here, we will set aside the first of those elements, and focus, instead, on the second. Perhaps Atty. Kupsis should have anticipated a Section 851 information, and informed Mr. Foster that it may have been forthcoming. However, we need not reach that inquiry, because this case is more easily resolved on the prejudice prong. We therefore avoid passing judgment upon whether Atty. Kupsis' failure to inform Mr. Foster during the plea negotiation process of the potential for a Section 851 information constitutes ineffective assistance of counsel.

It is more prudent for us to begin and end our analysis with the easily resolved question of whether Mr. Foster was prejudiced by Atty. Kupsis' failure to tell him about the potential for a Section 851 enhancement.

Mr. Foster was not required to prove that it was more likely than not that Atty. Kupsis' allegedly deficient conduct caused

a worse result for him. A "reasonable probability" is sufficient, which means a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Lafler v. Cooper*, 132 S. Ct. at 1385.

Even under that low standard, Mr. Foster still has not met his burden to show prejudice. The only evidence he provided is his single, self-serving statement. The district court found that Mr. Foster's statement was not credible, and therefore found that Mr. Foster had failed to establish prejudice.

That finding is due "exceptional deference" and we should not overturn it unless it is clearly erroneous. *Gant v. United States*, 627 F.3d 677, 681 (7th Cir. 2010) (quoting *Tezak v. United States*, 256 F.3d 702, 715–16 (7th Cir. 2001)). In reaching that finding, the district court relied on Atty. Kupsis' testimony that Mr. Foster repeatedly expressed his unwillingness to enter a plea that would result in a sentence anywhere near twenty years. That finding was, in fact, quite reasonable. The district court chose to credit the testimony of an experienced attorney, Kupsis, who was testifying against his own interest over Mr. Foster's own self-serving testimony. We, therefore, find that the district court's credibility determination was not clearly erroneous, and accordingly is entitled to our deference.

Several of our cases have stated that a petitioner in Mr. Foster's position must offer objective evidence that he would have accepted the plea agreement but for his attorney's poor performance, and that a single self-serving statement is not enough to succeed in making this showing. *See Julian v. Bartley*, 495 F.3d 487, 499–500 (7th Cir. 2007) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991); *Paters v. United States*, 159 F.3d

1043, 1047 (7th Cir. 1998); *Johnson v. Duckworth*, 793 F.2d 898, 902 n. 3 (7th Cir. 1986)). We recognize the similarities between this case and our decision in *Toro*, but specifically decline to decide this case under the rule announced in *Toro*. In *Toro*, we held that a defendant's single, self-serving statement that he would have accepted a plea was insufficient to demonstrate prejudice. 940 F.2d at 1068. At the time, we supported that hard-line rule with nothing more than a "cf." citation to *Strickland*. *Toro*, 940 F.2d at 1068 (citing *Strickland*, 466 U.S. at 694). In the years since, we have cited *Toro* sparingly, often in dicta and quite often noting that the case is distinguishable. *See, e.g.*, *Julian*, 495 F.3d at 499–500 (distinguishing *Toro* due to the overwhelming evidence of prejudice); *Paters*, 159 F.3d at 1047, 1049–50 (also distinguishing *Toro* due to the amount of evidence of prejudice and including a concurrence by Judge Rovner that discusses why the *Toro* rule is unsound). Finally, we note that the Supreme Court may take up this issue shortly. *Burt v. Titlow*, cert. granted, 133 S. Ct. 1457 (2013). Given the *Toro* rule's shaky foundations, its lack of firm support in subsequent case law, and the fact that the Supreme Court may shortly depart from it, we will not rely on it to dispose of this case.

Nor is it necessary for us to do so. As we have already mentioned, even if the district court could have chosen to rely on Mr. Foster's statement alone, it found that his testimony was not credible, as it was in conflict with Atty. Kupsis'. We find no issue with the district court's credibility determination. It was on that basis that the district court discounted Mr. Foster's statements that Atty. Kupsis did not adequately explain the importance of the proposed agreements and

further asserted that he would have pled guilty had he known of the potential for a Section 851 information. And, having discounted those statements, the district court was left with nothing else upon which it could find that Mr. Foster was prejudiced by Atty. Kupsis' omission.

Moreover, the district court had testimony adverse to Mr. Foster's position. Atty. Kupsis testified that Mr. Foster stated that "20 years is life," and the district court accepted that testimony as reliable. Analyzing that statement, the district court found—and we agree—that it is highly probative of Mr. Foster's extreme reluctance to accept any plea agreement under which he may have received close to twenty years imprisonment. Seeing as both proposed agreements would have resulted in guidelines near twenty years, we cannot imagine Mr. Foster being amenable to accepting either. Additionally, even after the Government filed the Section 851 information, Mr. Foster still urged Atty. Kupsis to take the case to trial, refusing Atty. Kupsis' suggestion that he try to salvage one of the earlier plea offers. This consistent refusal to take a plea agreement is evidence that he did not suffer prejudice due to Atty. Kupsis' failure. *Gallo-Vasquez v. United States*, 402 F.3d 793, 798–99 (7th Cir. 2005) (finding that there was no reasonable probability of prejudice when the record showed the petitioner's continued refusal to accept his attorney's advice to enter a plea agreement).

For all of these reasons—the lack of any credible evidence offered by Mr. Foster, and the amount of countervailing evidence against him—we conclude that the district court was correct in finding that Mr. Foster was not prejudiced by Atty. Kupsis' failure to alert him to the possibility of a Section 851

information. We therefore AFFIRM the district court's denial of Mr. Foster's Section 2255 motion.