# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-3557

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

PETER A. LOUTOS, SR.,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 CR 852—**William T. Hart**, *Judge.*

———————

ARGUED APRIL 14, 2004—DECIDED SEPTEMBER 8, 2004

———————

Before BAUER, COFFEY, and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* On October 30, 2002, Peter Loutos
pleaded guilty to knowingly aiding and abetting an indi-
vidual in making a false statement for the purpose of open-
ing an account at the First of America Bank in violation of
18 U.S.C. §§ 1014 and 2. The district court imposed a 37-
month custodial sentence. For the reasons stated herein, we
affirm his conviction but remand to the district court for re-
sentencing.

## BACKGROUND

### I. The Offense

In June of 1996, Loutos and his co-defendant Daniel Benson went to the First America Bank in Park Ridge, Illinois. Loutos accompanied Benson to the bank to aid him in opening a bank account for a corporation named Lennox Investment Group, Ltd. ("Lennox"). At that time, Loutos knew that Benson was not an owner, officer, or employee of Lennox, and that Benson did not have the authorization documents from Lennox that would enable Benson to open a bank account on behalf of Lennox. At the bank, Loutos and Benson met with a bank employee to open the Lennox account. Loutos, an attorney who had a long relationship with the bank, convinced the bank employee to open the Lennox account without the usual corporate authorization documents. As part of the application process, Benson and Loutos each completed a deposit account signature card and Benson completed a sole owner certification. To influence the bank in opening the account, and in Loutos' presence and with his knowledge, Benson falsely represented that he [Benson] was the sole owner of Lennox and he identified Loutos as a signatory on the account.

### II. The Guilty Plea

On October 21, 2001, an indictment was returned, charging Loutos with eight counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, one count of conspiring to commit money laundering offenses in violation of 18 U.S.C. § 1956(h), and seven counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1957, and 2.[1] However, on October 30, 2002, shortly before trial, a superseding information was

---

[1] The wire fraud scheme and related offenses will be referred to as "investment fraud."

filed and, in accordance with a written plea agreement, Loutos pleaded guilty to one count of making a false statement on an application for the purpose of influencing a federally insured bank in violation of 18 U.S.C. §§ 1014 and 2.[2]

The provisional Sentencing Guidelines calculations contained in the Plea Agreement indicated a Guideline sentencing range of 0-6 months of incarceration. At the time of the plea, the court deferred its decision to accept or reject the Plea Agreement. As had been scheduled, the trial of Loutos' co-defendants began on November 4, 2002. On December 11, 2002, the jury returned a verdict of guilty as to all counts against each defendant, except that they returned a verdict of not guilty as to one count of violating § 1957.

After receiving a copy of the presentencing report ("PSR"), the district court requested that the parties address some additional sentencing issues and indicated that Loutos' sentencing range may exceed 0-6 months. Specifically, the district court asked the parties to address the following issues: (1) whether any of the fraud proven at the trial of the other defendants was relevant conduct for Loutos' offense; (2) assuming relevant conduct, what amount of loss should be calculated; and (3) assuming relevant conduct, whether any of adjustment should be made based on Loutos' role in the offense.

### III. Loutos' Motion to Withdraw his Plea

On February 27, 2003, Loutos filed a motion to vacate his guilty plea based on four grounds: (1) that he has the absolute right to withdraw his guilty plea because the court has not actually accepted his plea in that U.S.S.G. § 6B1.1 precludes accepting the plea until after the supplemental or

---

[2] This charge and conduct will be referred to as "bank fraud."

revised PSR has been considered; (2) that under Fed. R. Crim. P. 11, he was not properly advised by the court prior to pleading guilty; (3) that he has a fair and just reason for withdrawing the plea because of a mutual mistake of the parties as to the correct guideline calculation; and (4) that he has a fair and just reason for withdrawing the plea because he is legally innocent of the bank fraud. On April 3, 2003, the district court denied the defendant's motion to vacate his guilty plea in a forty-five page memorandum opinion and order that addressed each of the claims raised by Loutos.

*IV. Sentencing*

On July 2, 2003, the district court entered another memorandum and order concerning Loutos' sentence. In his opinion, the district court concluded that the $11 million investment fraud proven during the trial of Loutos' co-defendants should be considered as relevant conduct for the bank fraud to which Loutos pleaded guilty. Based on this determination, the district court recalculated the defendant's total offense level under the Sentencing Guidelines to reflect this relevant conduct. This resulted in a total offense level of 21. A total offense level of 21 and a criminal history category of I provided for a sentencing range of 37 to 46 months. The district court sentenced Loutos to a term of 37 months in prison. The question before this court is whether Loutos was entitled to withdraw his guilty plea.

## DISCUSSION

Loutos argues on appeal that the district court abused its discretion when it denied his motion to withdraw his guilty plea. Federal Rule of Criminal Procedure 11(d)(2)(B) permits a defendant to withdraw a guilty plea upon showing any "fair and just reason." *United States v. Schuh*, 289

F.3d 968, 974 (7th Cir. 2002). It is the defendant's burden to demonstrate a fair and just reason. *United States v. Milquette*, 214 F.3d 859, 861 (7th Cir. 2000). We review the decision to deny a motion to withdraw for an abuse of discretion and the district court's factual findings as to whether the defendant has demonstrated a fair and just reason for withdrawal under Rule 11(d)(2)(B) is reviewed for clear error. *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir. 2002).

In a case where the defendant has filed a motion to vacate his guilty plea before the district court and has appealed the denial of that motion, we apply harmless-error analysis to determine whether any errors at the time the plea was taken justified relief under Rule 11(d)(2)(B). *United States v. Driver*, 242 F.3d 767, 770 (7th Cir. 2001). "The harmlessness inquiry naturally should focus on 'whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty.' " *United States v. Fernandez*, 205 F.3d 1020, 1024 (7th Cir. 2000) (quoting *United States v. Padilla*, 23 F.3d 1220, 1221 (7th Cir. 1994)).

Loutos argues that the court failed to provide the required Rule 11 warnings. In particular, Loutos objects to the district court's failure to specifically discuss appellate and collateral review waivers contained in paragraph 12 of the plea agreement as required by the Rule 11(b)(1)(N). While not stated specifically, Loutos essentially argues that the district court's failure to satisfy this subsection of Rule 11 rendered his guilty plea involuntary. The law of this circuit and the record in this case undermines Loutos' argument.

A plea of guilty is a "grave and solemn act." *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir. 1986). "Entry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). "A guilty plea admits, in

legal effect, the facts as charged." *United States v. Rietzke*, 279 F.3d 541,545 (7th Cir. 2002).

The purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing. *United States v. Gwiazdzinski*, 141 F.3d 784, 788 (7th Cir. 1998). Representations and admissions made by a defendant in a plea agreement and during a change of plea hearing are therefore entitled to "a presumption of verity." *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000). The validity of a Rule 11 colloquy is based on the totality of the circumstances, including such factors as "the complexity of the charge, the defendant's level of intelligence, age, and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government." *United States v. Blalock*, 321 F.3d 686, 688-89 (7th Cir. 2003).

In this case, the totality of the circumstances surrounding Loutos' October 30, 2002 plea colloquy establishes that his plea of guilty was knowing and voluntary. The district court properly noted in its April 3, 2003 memorandum opinion and order addressing Loutos' plea withdrawal motion, that the background of the defendant may be considered as part of the circumstances surrounding his guilty plea. Specifically, the district court made the following factual findings regarding Loutos' age, experience, and education:

> Loutos was 70 years old, graduated from law school in 1964, and also had an undergraduate degree in pharmacy. As had been disclosed during prior proceedings in this case. . . , Loutos was still a practicing attorney. Loutos should be considered to have a substantial level of sophistication, including some familiarity with the legal and court proceedings. Though there was no indication that his legal experience included working on

> criminal matters, Loutos may be presumed to be familiar with contracts and the need to carefully read documents that are contractual in nature and signed by the party.

Br. of Respondent at 18.

Therefore, an examination of the totality of the circumstances surrounding Loutos' Rule 11 plea colloquy reveals that, despite the district court's omission of a specific appellate waiver warning, his plea of guilty was knowing and voluntary. Moreover, Loutos acknowledged under oath that he understood the consequences of his guilty plea, that he had not been pressured or coerced to plead guilty, and that his plea was voluntary. These representations are presumed truthful. *See Gwiazdzinski*, 141 F.3d at 788. The record clearly establishes that the district court's omission of an appellate waiver warning during the plea colloquy was harmless, and the district court did not abuse its discretion.

In addition to challenging the Rule 11 colloquy, Loutos also claims that the district court abused its discretion in denying his motion to withdraw his guilty plea because the court rejected the parties' plea agreement. This argument comes from the defendant's view that the district court committed error when it determined the $11 million investment fraud proved during the trial of the co-defendants should be considered relevant conduct during his sentencing on the superseding information. Based on this ruling the district court made a significant change to the sentencing guideline calculations. The district court determined that fifteen levels should be added to the guideline calculations as a specific offense characteristic.

The district court's decision here does not effect the validity of the defendant's plea agreement nor does it effect the court's decision to deny his motion to withdraw because the plea agreement itself says "it is understood by the parties that the sentencing judge is neither a party to nor bound by

this Agreement and, subject to the limitations of the sentencing guidelines, *may impose the maximum penalties as set forth*. . . ." Br. of Respondent at 24. However, as this court recently determined in *United States v. Booker*, 2004 WL 1535858 (7th Cir. July 9, 2004), the Supreme Court's decision in *Blakely v. Washington*, 2004 WL 1402697 (U.S. June 24, 2004), calls into question the constitutionality of the U.S. Sentencing Guidelines. *United States v. Ohlinger*, 2004 WL 1714890 (7th Cir. Aug. 2, 2004). Under *Blakely* as interpreted in *Booker*, a defendant has the right to have a jury decide factual issues that will increase his sentence. *Id.* at 3. "As *Booker* holds, the Guidelines contrary assertion that the district judge may make such factual determinations based upon the preponderance of the evidence runs afoul of the Sixth Amendment." *Id.* While here the district judge based his findings on the jury's verdict from Loutos' co-defendant's trial, which was beyond a reasonable doubt, he still had to make additional factual findings that went beyond Loutos' admitted conduct.[3] We therefore remand Loutos' case to the district judge for resentencing in light of *Booker*.

---

[3] We have no need to determine whether it is proper under *Blakely* to use jury findings from a co-defendant's trial at all for purposes of sentencing; we need only to note that the judge went beyond the verdict here and made additional findings that raised the defendant's offense level and significantly raised his sentence.

A true Copy:

   Teste:


                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*