In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1153

MARLO U. MORALES,

*Petitioner-Appellant*,

*v.*

ANA BOATWRIGHT,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 C 600—**Lynn Adelman**, *Judge.*

ARGUED JANUARY 8, 2009—DECIDED SEPTEMBER 3, 2009

Before EASTERBROOK, *Chief Judge*, and EVANS and
TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Marlo Morales pleaded guilty in
Wisconsin to two counts of first degree sexual assault of
a child. After receiving an unexpectedly long sentence,
he sought multiple reviews of his conviction in the Wis-
consin state courts; after losing there, he sought a
federal writ of habeas corpus. The district court denied
his petition. We affirm.

## I. Background

Marlo Morales was charged with two counts of first degree sexual assault of a child. He gave a statement to the police in which he admitted knowing the victim was eleven years old when he had sex with her, but that he could not control his urges because she was always teasing him. According to his confession, he had sex with the victim on at least five occasions beginning in the fall of 1999. His account, and that of the victim, was corroborated by a sexual assault nurse at a hospital. The nurse determined that the victim had recently had intercourse and was infected with a sexually transmitted disease. The victim told police that she had not had sexual intercourse with any other partners in her life. She was not yet thirteen at the time. Later, prosecutors informed the court that the victim had been assaulted at another time by another man.

In June 2000, Morales entered an *Alford* plea to two counts of first degree sexual assault of a child and was sentenced to concurrent prison terms of forty and sixty years (twenty of which were extended supervision). *See North Carolina v. Alford*, 400 U.S. 25 (1970). Because the sixty-year sentence was issued pursuant to Wisconsin's truth-in-sentencing law, Morales is not eligible for parole or good behavior credits, a circumstance he claims not to have known when entering into the plea agreement. In July 2001, Morales sought postconviction relief from the trial court and raised a variety of ineffective assistance claims, including two of the claims before us: that his trial counsel improperly understood the

Wisconsin rape shield law (which would have allowed him to impeach his victim's testimony) and that the trial court failed to ensure that he understood the consequences of his guilty plea. He lost on August 2, 2001, and appealed. The Wisconsin Court of Appeals affirmed the trial court, adopting the "no-merit" report of his appellate counsel. Morales had filed a pro se response to the no-merit report, raising several new claims. The state supreme court denied review of his conviction on January 23, 2004.

Morales then attacked his conviction collaterally, under WIS. STAT. § 974.06, arguing that his appellate counsel was ineffective for failing to attack the effectiveness of his trial counsel. At this point, he raised the second ineffectiveness claim we have here regarding his trial counsel's failure to inform him of the sentencing consequences of his *Alford* plea. His collateral attack failed in the Wisconsin circuit court and court of appeals on the merits and because he failed to raise the claim in his response to his appellate counsel's no-merit brief. His petition for review of his § 974.06 motion was denied by the Wisconsin Supreme Court.

Proceeding onward, Morales filed a habeas petition in the Wisconsin Court of Appeals, challenging the effectiveness of his appellate counsel for his failure to raise the claim that his trial counsel was ineffective for not ensuring Morales understood all the elements of the crime. His petition was dismissed for a number of reasons discussed *infra*.

On May 16, 2006, Morales filed a petition for a writ of habeas corpus with the United States District Court for

the Eastern District of Wisconsin, and presented the issues we have before us in various forms. The state moved to dismiss, arguing that the petition was untimely and that Morales had procedurally defaulted on all of his claims. The district court found the petition timely and that Morales had not defaulted on the claims that we have here. But the district court denied the petition on the merits.

Morales requested a certificate of appealability, which the district court denied. We granted a certificate of appealability, finding that Morales "made a substantial showing of the denial of a constitutional right as to whether his trial counsel rendered constitutionally sufficient assistance and whether his guilty plea was knowing and voluntary."

## II.  Analysis

### A.  Standard of Review

We review a district court's decision to deny habeas relief de novo. *Daniels v. Knight,* 476 F.3d 426, 433 (7th Cir. 2007). Our review of petitioner's claims is constrained by the rules of the Antiterrorism and Effective Death Penalty Act, particularly 28 U.S.C. §§ 2244 & 2254, as outlined below. Wisconsin contests Morales's petition on a number of procedural grounds, also discussed below, as well as on the merits, which we find we must reach.

## B. Timeliness

Morales had one year after his conviction became final in Wisconsin state court to bring a federal habeas petition. 28 U.S.C. § 2244(d)(1)(A). This limitation period is tolled while petitions for relief in state court are pending, as long as such petitions were properly filed. *Id.* § 2244(d)(2).

A brief word about Wisconsin's postconviction procedures is in order. It is obviously incumbent on a defendant to raise all the issues necessary to his defense at trial. If he does not do so, these are ordinarily waived. However, after his trial, a defendant has an opportunity to challenge the effectiveness of his trial counsel in a postconviction motion. *See* WIS. STAT. § 974.02. This motion allows the defendant to preserve issues that should have been raised at trial but were not, due to his counsel's alleged ineffectiveness. Failure to make this motion results in a forfeiture of all of defendant's claims, except for any claims that his postconviction counsel was ineffective for failing to raise. After a loss at trial and the denial of the postconviction motion, the defendant can then take his direct appeal to the Wisconsin Court of Appeals; there, the court considers any trial errors, including the ineffectiveness claims that the defendant raised in his postconviction motion. On direct appeal, defendant's appellate counsel, instead of pursuing the appeal, may file a no-merit report, which details the defendant's potential claims and the reasons that each claim lacks merit. A defendant may elect to file a pro se response to his counsel's no-merit report. After the disposition of his appeal, the defendant still may file

a § 974.06 motion, which is equivalent to a petition for habeas corpus, if he is in custody "in violation of the U.S. constitution or the constitution or laws of [Wisconsin]. . . ." WIS. STAT. § 974.06. The Wisconsin Supreme Court has held that § 974.06 motions challenging the effectiveness of appellate counsel should be filed directly in the court of appeals. *State v. Knight*, 484 N.W.2d 540, 545 (Wis. 1992). But, § 974.06 motions challenging the effectiveness of appellate counsel on the grounds that appellate counsel should have challenged trial counsel's effectiveness should be filed in the trial court. *State ex rel. Rothering v. McCaughtry*, 556 N.W.2d 136, 139 (Wis. Ct. App. 1996). The argument over how to properly characterize an ineffectiveness claim apparently arises frequently in Wisconsin courts, particularly when a defendant's appellate counsel fails to raise an ineffectiveness claim based on his trial counsel's conduct. The Wisconsin Court of Appeals has recently noted the confusion and delay that results in habeas filings in Wisconsin that are based on these dual-level ineffectiveness of counsel claims. *See State ex rel. Panama v. Hepp*, 758 N.W.2d 806, 812-13 (Wis. Ct. App. 2008).

Morales's conviction became final on April 22, 2004, at the end of the ninety days after the Wisconsin Supreme Court denial of his direct appeal during which he could have sought a writ of certiorari from the U.S. Supreme Court. *Jones v. Hulick*, 449 F.3d 784, 787 (7th Cir. 2006). Two hundred fifty-seven days later, on January 4, 2005, Morales filed a petition for collateral relief under § 974.06 in state court. Review of this petition was ultimately denied by the Wisconsin Supreme Court on January 23,

2006. The next day Morales filed another § 974.06 motion in the Wisconsin Court of Appeals attacking the effectiveness of his appellate counsel. This petition was denied on May 11, 2006. Five days later he filed the instant habeas petition.

The crux of the timeliness issue is whether the second § 974.06 motion, filed in state appeals court, was properly filed for purposes of tolling the federal statute of limitations on habeas actions. If so, Morales filed this petition 262 days (after the tolled time is subtracted) from the date his conviction became final. If the second § 974.06 motion was not properly filed, Morales loses the 108 days during which his petition in the Wisconsin Court of Appeals was pending and thus, at 370 days, misses the cutoff date by five days.

Morales relies on *Knight* to support his contention that the petition was properly filed in the Wisconsin Court of Appeals. In *Knight*, the Wisconsin Supreme Court established the court of appeals as the proper forum for a § 974.06 motion alleging ineffective assistance of appellate counsel. *Knight*, 484 N.W.2d at 541. In his *Knight* petition (as it is known in Wisconsin), Morales argued that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for neglecting to ensure that the circuit court questioned Morales sufficiently regarding his understanding of the elements of the crime to which he was entering a plea.

The Wisconsin Court of Appeals denied the habeas petition in an unpublished opinion "for a number of reasons." First, Morales did not submit sufficient informa-

tion to support the claim that the circuit court did not properly ensure that he was aware of the elements of the charges against him. Second, Morales did not claim he did not understand the elements of the charges. Third, Morales forfeited the issue. Finally, the court determined that the challenge to the effectiveness of his appellate counsel was actually an attack on the effectiveness of his trial counsel, a claim that should have been raised in the trial court. The question then is whether the Wisconsin Court of Appeals dismissed Morales's *Knight* petition as an improperly filed claim.

Morales claims that under *Knight*, the petition was properly filed and that the Wisconsin Court of Appeals did not rely on the improper filing to dispense of his claim. The district court found that Morales arguably complied with a state rule despite the Wisconsin court's "remark" to the contrary and gave him the benefit of the doubt, allowing him to proceed with his habeas claim.

Wisconsin argues that Morales's petition ran afoul of our decision in *Johnson v. McCaughtry*, 265 F.3d 559 (7th Cir. 2001). There, two petitions by a Wisconsin prisoner were dismissed because of some confusion about where to file claims for ineffectiveness of counsel in the prisoner's initial postconviction hearing. We held that because these claims were not properly filed they did not toll the federal statute of limitations. *Johnson*, 265 F.3d at 564 ("If a state court accepts and entertains the petition on its merits, it has been 'properly filed,' but if the state court rejects it as procedurally irregular, it has not been 'properly filed.'").

*Johnson* is of little help to Wisconsin if, as Morales argues, the Wisconsin Court of Appeals entertained his petition on its merits, which would mean it was "properly filed" under *Johnson*. Wisconsin argues that because the court of appeals "clearly and expressly" relied on a filing error, specifically that the petition was filed in the wrong court, "as a basis for its ruling," the claim was not properly filed. A fair reading of the Wisconsin opinion, however, reveals something less than clarity.

In *Smith v. Battaglia*, 415 F.3d 649 (7th Cir. 2005), we undertook a similar inquiry to the one here. "If the appellate court's decision rested on at least two separate grounds" to reject the petition, one of which is improper filing, the petitioner cannot prevail. *Id.* at 653. For an improperly filed petition to be a separate and adequate ground for the state court disposition of the case, the court must have, as noted, clearly and expressly relied on the filing error to rule against the petitioner. In *Smith*, we found three factors that indicated that the untimeliness of the petition (the filing error at issue in *Smith*) was not a separate ground, clearly and expressly relied upon, for the state decision. First, "the court structured its comments so that it addressed the merits of [petitioner's] claims first and only at the end, added its ambiguous comment about timeliness." Second, the court used the term "may" to modify "be considered", and may is a word that could have two meanings in that context. Finally, the petitioner in *Smith* had an excuse for delay in filing that the court did not address. We reasoned that if the delay was an independent and adequate state ground for finding the petition untimely, the

state court would have considered Smith's argument that the delay was excusable. *Id.* at 653.

What *Smith* teaches is that it is incumbent on this court to parse the state court's language to determine whether that court believed dismissal was appropriate based on a filing error. If so, the instant petition is time-barred. It is at best difficult to discern the Wisconsin court's intent here. After delineating the "number of reasons" the court denied the habeas corpus petition, none of which included a finding that the instant petition is "improperly filed," the court addressed whether Morales filed his petition in the correct court. The key sentences read: "Finally, the court notes that Morales frames the issue as one of appellate counsel's ineffectiveness for failing to challenge trial counsel's effectiveness regarding the validity of the plea colloquy. This is the sort of issue that, if viable, must first be raised in the circuit court." *State ex rel. Morales v. Farrey*, No. 2006AP214-W at 3 (Wis. Ct. App. Mar. 2, 2006).

Given that the proper court to file an attack on appellate counsel is apparently an issue of some confusion in Wisconsin, *Panama*, 758 N.W.2d at 813 (tracing the development of Wisconsin's § 974.06 rules and finding that "the cases collectively create much confusion and delay"), we think that, like in *Smith*, the court's "note" at the end of its opinion does not lay out an independent and adequate state ground for the denial of Morales's *Knight* petition, particularly since the court more fully explicated its reasoning for denying the case on the merits earlier in its opinion. Had the fact that the

petition was filed in the appellate rather than the circuit court been a wholly independent ground for the court's ruling, we think the court would have expressly held that such a claim cannot be brought at the appellate level, with citation to relevant case law bolstering its position. (It instead cited to *Rothering,* 556 N.W.2d at 138, which turned on the distinction between a defendant's postconviction and appellate counsel, an issue not present here). So, the second § 974.06 motion by Morales did toll the time for filing his federal habeas petition.

Accordingly, we find that Morales's petition is timely and we may turn to the two issues he raises: his counsel's ineffectiveness due to a misunderstanding of Wisconsin's rape shield law and the voluntariness of Morales's guilty plea in light of the actual potential sentencing consequences of such a plea.

### C.  Wisconsin's Rape Shield Law

Morales alleges that his counsel was ineffective for failing to correctly understand Wisconsin's rape shield law. Morales argues that, contrary to his counsel's advice, Wisconsin law would have allowed him to impeach the victim's testimony that she had not had any sexual contact other than with Morales. Furthermore, contrary to his counsel's advice, Morales believes the law would have allowed him to argue that because the victim was infected with a sexually transmitted disease and he was not, he was not guilty of the sexual assault. Morales claims he would have proceeded to trial armed with these tools of impeachment.

Our review here is constrained by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(1), because the Wisconsin Court of Appeals rejected Morales's rape-shield-based claim on direct review of Morales's conviction. Because the ineffectiveness claim regarding the rape shield law is a matter of law that was litigated on the merits in both Morales's direct appeal and state postconviction proceedings, we can only disturb the state court's adjudication if it "was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." *Id.*

Here, the applicable federal law governing ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hill v. Lockhart*, 474 U.S. 52 (1985). A defendant challenging a guilty plea based on ineffective assistance of counsel must show that his "representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. In the context of a guilty plea, the prejudice requirement is satisfied if the defendant shows "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. This determination depends on whether absent the error, defendant's counsel would have changed his "recommendation as to the plea" which in turn depends on whether "the evidence likely would have changed the outcome of a trial." *Id.*

Wisconsin's rape shield law excludes the admission of "any evidence concerning the complaining witness's prior sexual conduct" with certain relevant exceptions. WIS. STAT. § 972.11(2)(b). Exceptions exist for "[e]vidence of the complaining witness's past conduct with the defendant," "[e]vidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered," and "[e]vidence of prior untruthful allegations of sexual assault made by the complaining witness." *Id.* The Wisconsin Supreme Court has found a constitutional exception to the statute, making evidence of a prior sexual assault admissible to rebut an inference that a child victim's sexual knowledge came from her experience with the defendant. *State v. Pulizzano*, 456 N.W.2d 325, 334-35 (Wis. 1990).[1]

Morales argues that his counsel was constitutionally deficient in two respects. First, he should have investigated

---

[1] A close reading of the rape shield law and *Pulizzano* indicates that Morales's trial counsel was very likely correct that testimony about the victim's prior sexual assault and disease are inadmissible. Such evidence is only admissible to prove the existence of sexual knowledge (not at issue here), the extent of injury from sexual assault (also not at issue), and prior untruthful allegation of sexual assault (not at issue, because while the victim denied being assaulted by another man, she made no false allegation). Morales cites no Wisconsin law to say that a child victim can somehow be impeached by this type of testimony or that it would exonerate the defendant. In fact, the law seems designed exactly to forbid this evidence.

the source of the victim's sexually transmitted disease as a potential defense to the rape and investigated her prior false accusations of sexual assaults. Second, Morales's counsel failed to investigate whether Morales had the same sexually transmitted disease that the victim had. Morales's postconviction motion offered evidence that he did not have a sexually transmitted disease. Had counsel investigated these leads, Morales believes he would not have advised Morales to plead guilty.

The Wisconsin Court of Appeals, on direct appeal, denied the ineffective assistance claim (essentially presented on the same basis as it is here) based on the "overwhelming evidence" of Morales's guilt. Similarly, the district court found that evidence of the source of the victim's sexually transmitted disease was irrelevant because the only issue in the case was whether Morales had intercourse with the victim and Morales had admitted repeated instances of sexual intercourse with the victim.

While neither court analyzes the case exactly under the guidelines established by *Strickland* and *Hill*, their message is clear: Morales suffered no prejudice because the potential outcome at trial would have been the same. *See Hill*, 474 U.S. at 59. Morales admitted both to the police and in open court (during an earlier aborted plea hearing) to sexual intercourse with the eleven-year-old. Consent of the victim would be no defense to the crime. *See* WIS. STAT. § 948.02. Morales argues on appeal that he could have renounced his confession (and statements in

court, apparently) on appeal and gone to trial with evidence that showed that he did not cause the girl's disease. However, given the existence of his confession, it's at the very least not an unreasonable application of *Strickland* to find that his counsel's choice to refuse to pursue the impeachment of his victim (who was not going to testify) was proper and that Morales suffered no prejudice from failure to pursue this lead.[2]

### D.  Morales's Guilty Plea

### 1.  Procedural Default

The state contends that Morales defaulted his claim that his counsel did not ensure that he knowingly and voluntarily waived his rights when pleading guilty because Morales did not raise the issue on direct appeal in his

---

[2]  Furthermore, because the victim's mother was not cooperating before trial, the state was going to proceed with simply the evidence of the victim's visit to the hospital and Morales's confessions. It's unclear at what point in a hypothetical trial the fact that the victim had been previously assaulted and had a disease would be admissible, particularly if the prosecution never alleged that the disease came from Morales, a tactic that would have been appropriate in light of the other overwhelming evidence against him. In other words, the prosecution's case was tight enough to be presented without any evidence that Morales could have rebutted using the information he contends his counsel was ineffective for failing to investigate.

response to his counsel's no-merit brief.[3] The Wisconsin courts subsequently treated the issue as defaulted in their rulings on Morales's § 974.06 motions, relying on *State v. Escalona-Naranjo*, 517 N.W.2d 157 (Wis. 1994), in which the Wisconsin Supreme Court held that a defendant cannot seek collateral review of a constitutional claim that could have been raised as part of his direct appeal. Because of this alleged default, Wisconsin argues that Morales did not fairly present his constitutional challenges in state court and should thus be barred from federal habeas relief. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

The district court relied on our holding in *Page v. Frank*, 343 F.3d 901 (7th Cir. 2003) to find that Morales did not default. In *Page*, a similarly situated Wisconsin prisoner attempted in the context of a § 974.06 motion to collaterally attack the effectiveness of his appellate counsel for failing to raise an ineffective assistance claim against his trial counsel. As they did here, the Wisconsin courts treated the claim as defaulted because the petitioner did not raise it as a response to his appellate counsel's no-merit brief.[4] We found that he had

---

[3] The state does not contend that our review of the trial court's role in Morales's plea is precluded. This issue was raised in his direct appeal.

[4] The state argues that a defendant whose counsel submitted an *Anders* brief is not allowed habeas review of any claim submitted in the *Anders* process unless he proves that the court of

(continued...)

not defaulted the issue, because he was barred under Wisconsin law from raising on appeal issues he had not brought in his previous postconviction motion in the trial court. If he had brought the issue in response to the no-merit brief, it would have been fruitless because his postconviction counsel had failed to bring it in the trial court. *Page*, 343 F.3d at 909. Thus, a § 974.06 motion was his only opportunity to litigate his ineffectiveness claim.

Wisconsin distinguishes *Page* from Morales's case by pointing out that Morales raised several ineffective assistance claims in his first postconviction motion in the trial court (including the rape shield one discussed above) and a few new ones in response to his counsel's no-merit report. In sum, because Morales was able to raise these claims, and the Wisconsin court entertained them, the state argues that Morales was not barred from raising the instant sentencing claim in state court, an issue that *Page* turned on.

---

[4] (...continued)

appeals acted contrary to or unreasonably applied *Anders*. *See Anders v. California*, 386 U.S. 738 (1967). This cannot be the case.

If Morales is in custody unlawfully, and therefore has a meritorious habeas petition, it is not because the appeals court unlawfully applied the procedural rules of *Anders*, but because his Sixth Amendment rights were violated. Subject to the procedural requirements discussed above, once we assure ourselves that he attempted, at every opportunity, to raise his Sixth Amendment claims in Wisconsin courts, we are obligated to reach these claims, even if his counsel and the court of appeals found them without merit.

But, it appears that under Wisconsin law, Morales could not have raised the ineffectiveness issue in his no-merit response. The Wisconsin Court of Appeals, ruling on his direct appeal, plainly stated that "[a]ny claim of ineffective assistance must first be raised in the trial court," citing *State v. Machner*, 285 N.W.2d 905 (Wis. Ct. App. 1979), and found that it was "inappropriate for this court to determine competency of trial counsel based on unsupported allegations." So, while Wisconsin argues that the court considered Morales's new ineffectiveness claims on appeal, the court's opinion makes clear that waiver was an independent and adequate ground for the state court's decision. Thus, Morales faced the same dilemma that we found dispositive in *Page*.[5] *Page*'s application therefore seems appropriate here; a defendant should be able to collaterally attack the performance of his counsel if he had no real opportunity to raise this issue on direct appeal.[6] *See also Cone v. Bell*, 129

---

[5] Recently, the Wisconsin Supreme Court granted review of a case that deals with the same interplay between the *Escalona-Naranjo* bar and no-merit procedures. *State v. Allen*, 765 N.W.2d 578 (Wis. 2009); *State v. Allen*, 750 N.W.2d 518 (Wis. Ct. App. 2008). The Wisconsin Supreme Court's ultimate determination may affect the future application of *Page*, but we see no reason to delay our review of Mr. Morales's appeal, particularly since we do not rely on Wisconsin's procedural bars to avoid consideration of its merits.

[6] Furthermore, in *Page* we relied on "an even more fundamental reason" than the intricacies of Wisconsin habeas law. "It

(continued...)

S. Ct. 1769, 1780 (2009) ("[T]he adequacy of state proce-
dural bars to the assertion of federal questions . . . is not
within the State's prerogative finally to decide; rather,
adequacy is itself a federal question." (quotations omit-
ted)).

### 2. Merits

At last, we reach the merits of Morales's challenge to the
voluntariness of his plea. This claim is presented to us
in two ways. First, Morales challenges the Wisconsin
Court of Appeals' determination that his plea was
knowing and voluntary, a determination that rested on
an examination of the procedures of the trial court. This
is subject to AEDPA's "contrary to" or "unreasonable
application of" requirements because the Wisconsin state
court ruled against Morales on the merits. Second, Morales
challenges the effectiveness of his trial counsel, arguing
that he failed to ensure that he understood the effect
of Wisconsin's truth-in-sentencing law.

#### a. Alleged Trial Court Errors

When a defendant pleads guilty, he waives constitu-
tional rights. "Waivers of constitutional rights not only

---

[6] (...continued)
would be incongruous to maintain that [petitioner] has a Sixth
Amendment right to counsel on direct appeal, but then to
accept the proposition that he can waive such right by simply
failing to assert it in his pro se response challenging his coun-
sel's *Anders* motion." *Page*, 343 F.3d at 909.

must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Morales argues that we squarely addressed whether a defendant needed to be informed about all the sentencing consequences of his plea in *United States v. Smith*, 440 F.2d 521, 522 (7th Cir. 1971). There, we found that the defendant, according to Federal Rule of Criminal Procedure 11, had to be informed that parole was not available to him on the charge and ordered an evidentiary hearing to determine whether he was without understanding of the consequence of his plea. *Id.* at 526.

Smith does not control the outcome of Morales's case. First, *Smith* concerned the application of Fed. Rule Crim. P. 11 and thus established no constitutional standard applicable to state sentencing. Second, Rule 11 has subsequently been amended to specify the exact consequences of the plea of which a defendant must be advised; these consequences do not include parole eligibility. *See Hill*, 474 U.S. at 56 (citing Advisory Committee's Notes on 1974 Amendment to Fed. Rule. Crim. P. 11). Third, *Smith* was issued fourteen years before *Hill v. Lockhart*, where the Supreme Court declared that "[w]e have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary . . . ." *Id.* Finally, *Smith* is a case from this court, and not the clearly established Supreme Court law to which a state court decision must be contrary in order for habeas to be appropriate under AEDPA. 28 U.S.C. § 2254(d)(1).

Morales does not contend that he had no idea of the
maximum sentence or that he did not understand that the
prosecution's recommendation was not binding on the
court. He only argues that he did not understand the
actual, practical consequences of his plea. But, in *Hill*, the
Supreme Court made clear that there is no constitutional
requirement that a trial court ensure this understanding.
The Wisconsin Court of Appeals' finding that "Morales's
pleas were knowingly, voluntarily and intelligently
entered" therefore comports with *Hill* and was thus a
reasonable application of Supreme Court precedent.[7]

### b. Alleged Counsel Errors[8]

Under *Hill*, to make out a claim for ineffective
assistance of counsel in this context, Morales must
show that counsel performed below a minimum level
of competency and that, but for counsel's errors, it was
reasonably probable that he would not have pleaded
guilty. *Id.* at 58-59. There is absolutely no reason,
beyond Morales's contention, to think that he would
not have pleaded guilty even if we accept his con-

---

[7] Morales's subsidiary claim that Wisconsin law required the
trial court to ensure that he knew about the parole consequences
of his plea is not cognizable in a federal habeas action. *See
Lambert v. Davis*, 449 F.3d 774, 778-79 (7th Cir. 2006) (citing
*Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

[8] We are not constrained by AEDPA regarding this second
issue because this issue was not decided on the merits in the
Wisconsin courts (see above).

tention that he did not fully understand the sentencing consequences of his plea. "[A] mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005). "The defendant must go further and present objective evidence that a reasonable probability exists that he would have taken that step." *Id.*

The objective evidence here reveals that Morales would have accepted the deal even if he were aware of the truth-in-sentencing consequences of his crime. First, as part of his plea deal, his prosecutors recommended fifteen years in prison. After this agreement, the sentencing judge's imposition of the maximum sentence must have been shocking, even though the defendant acknowledged in court and his plea agreement that he was aware that the judge could impose such a sentence. We believe that the recommendation the prosecutors offered would have been even more enticing had Morales known the extent of time he could have faced under Wisconsin's truth-in-sentencing regime. Second, as the Wisconsin courts noted, the evidence of Morales's guilt was overwhelming. Choosing to hope that the state's fifteen-year recommendation would be followed in order to avoid the possibility that he would be sentenced to a much longer term after being convicted at trial would have been the most reasonable decision that Morales and his counsel could make. He therefore cannot establish the requisite prejudice for an ineffective assistance claim. *See id.* at 360.

### III. Conclusion

Accordingly, we AFFIRM the district court's denial of the writ.