In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3538

KEVIN G. HUTCHINGS,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 08 C 1013—**Michael M. Mihm**, *Judge.*

ARGUED FEBRUARY 22, 2010—DECIDED AUGUST 24, 2010

Before KANNE and WILLIAMS, *Circuit Judges*, and
SPRINGMANN, *District Judge.*[*]

KANNE, *Circuit Judge*. Kevin Hutchings filed this peti-
tion for a writ of habeas corpus under 28 U.S.C. § 2255
after he discovered that the government would not
move to reduce his sentence under Federal Rule of

_____

[*] Hon. Theresa L. Springmann, District Judge for the Northern
District of Indiana, sitting by designation.

Criminal Procedure 35, contrary to what his attorney had allegedly promised him. Hutchings argues that his attorney's false guarantee of a Rule 35 reduction in his sentence violated his Sixth Amendment right to effective assistance of counsel. The district court denied Hutchings's petition, and we affirm.

## I. BACKGROUND

Hutchings was sentenced by a Texas court in 1992 to a ninety-nine-year prison sentence for an aggravated drug offense, but was released on parole in 2001. His parole is not scheduled to terminate until 2091. The year after he was released on parole, Hutchings began trafficking marijuana, cocaine, and methamphetamine, by purchasing the drugs in Texas and selling them in Peoria, Illinois. He was arrested in October 2003 in Cleveland, Ohio. He was charged in federal court in Ohio with, and pled guilty to, possession with intent to distribute cocaine, for which he was sentenced to ten years' imprisonment. In August 2005, a federal grand jury in Peoria charged Hutchings with conspiracy to distribute more than 500 grams of methamphetamine and more than five kilograms of cocaine. Based on Hutchings's five prior felony drug convictions, the government sought to enhance his sentence under 21 U.S.C. § 851, which would result in a mandatory minimum life sentence.

The court appointed Mark Wertz to represent Hutchings regarding the charges in Peoria. Wertz told Hutchings that if he pled guilty, the court would sentence him to life in prison. However, according to Hutchings, Wertz

also told him that if he pled guilty and cooperated with the government, one year later the government would move to reduce his sentence to twenty to twenty-five years under Federal Rule of Criminal Procedure 35. Wertz allegedly did not tell Hutchings that the government had broad discretion to bring a Rule 35 motion, and that the district court had the ultimate discretion whether to grant it. According to Hutchings, Wertz explained to him that the government would not ask for a reduced sentence in exchange for his initial guilty plea because the government wanted to appear to the public to be tough on crime. The reduced sentence would have to wait for one year when it could be arranged with less publicity.

In response to Hutchings's habeas petition, the government attached an affidavit of attorney Wertz. Although Wertz spends significant ink describing his impression of whether Hutchings voluntarily pled guilty, conspicuously missing from the affidavit is any statement by Wertz negating Hutchings's version of events—specifically, that Wertz guaranteed a sentence reduction.

Prior to pleading guilty, Hutchings wrote several letters to the district court in which he admitted his guilt and requested the opportunity to plead guilty as soon as possible. The apparently upbeat[1] Hutchings

---

[1] At his sentencing hearing in June 2006, Hutchings asked the district court "for a three-week stay in order to clear up some unfinished business and to party for a while." (Supp. App.

(continued...)

wrote to the district court, among other things, that he bought cheap drugs and sold them in Illinois (R. at 61, p.1),[2] that he "set out to break the law and did exactly that" (*id*. at 54, p.2), that involving himself in a long, drawn-out trial was pointless because he had a life sentence from previous cases (*id*. at 49, p.1), and that he was impatient to get back to "lovely Three Rivers, Texas," where he was previously incarcerated, because his fellow hearts players in prison missed him (*id*. at 54, p.1).

The district court held a change of plea hearing in February 2006, when Hutchings pled guilty to a superseding indictment. As part of the properly conducted Rule 11 colloquy, after placing Hutchings under oath, the district court asked him if there had been "any promises or assurances of any kind made to [him] in an effort to induce [him] to plead guilty?", to which Hutchings replied, "No, sir." (Supp. App. at 16.) The district court also confirmed with Hutchings that he understood that pleading guilty would result in a mandatory life sentence without the possibility of parole. (*Id*. at 17.) Hutchings pled guilty, and in June 2006 the district court sentenced him to life in prison without the possibility of parole.

---

[1] (...continued)
at 46.) The district court denied the request in no uncertain terms. (*Id*. at 52.)

[2] References to "R." are to the numbered docket entries in the district court for Hutchings's underlying criminal case, No. 05-cr-10061.

Of course, now in his habeas petition, Hutchings alleges that in fact there was a promise made to induce him to plead guilty; he argues that had his attorney not guaranteed him a sentence reduction for pleading guilty, he would have gone to trial rather than plead guilty. He alleges that he lied to the district court about Wertz's guarantee because of what Wertz had allegedly told him about the government wanting to appear tough on crime.

Hutchings later signed a cooperation agreement with the Drug Enforcement Administration, pursuant to which he twice met with a government agent to provide evidence. Hutchings alleges that he called Wertz sixty times between May and October 2007 to find out when he would be resentenced. Wertz told him that he would check with the government to find out. Finally, on October 15, 2007, Wertz told Hutchings that the government said that it would not move to reduce his sentence because he had not provided substantial assistance.

This petition for a writ of habeas corpus followed, arguing, among other things, that his guilty plea was involuntary because Wertz's guarantee of a sentence reduction constituted ineffective assistance of counsel. The district court denied Hutchings's petition without holding an evidentiary hearing, and subsequently denied Hutchings's motion for a certificate of appealability. In January 2009, however, this court gave Hutchings a certificate of appealability, finding that "Hutchings has made a substantial showing of the denial of a constitutional right as to whether counsel's advice regarding Hutchings's plea of guilty was ineffective assistance."

## II. ANALYSIS

This appeal raises two issues: first, whether Wertz's advice to Hutchings violated Hutchings's constitutional right to effective assistance of counsel, and second, whether the district court should have held an evidentiary hearing before ruling on Hutchings's habeas petition.

The government initially urges us to reject Hutchings's petition outright because his "Memorandum of Law and Facts" was not signed under penalty of perjury. But the government waived this argument by failing to present it to the district court. *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machs. Corp.*, 547 F.3d 882, 889 n.3 (7th Cir. 2008) (quoting *Hicks v. Midwest Transit, Inc.*, 500 F.3d 647, 652 (7th Cir. 2007)). Even if the argument was not waived, we find that Hutchings properly incorporated by reference his Memorandum into his sworn petition, especially considering his *pro se* status at the time of his original filing. *Cf. Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).

### A. Ineffective Assistance

Turning now to the merits, we review the district court's denial of a petition for a writ of habeas corpus under § 2255 *de novo* as to legal questions and for clear error as to factual questions. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). We analyze a petitioner's claim of ineffective assistance of counsel under the two-part inquiry described in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To prevail on an ineffective-assistance[-]of-counsel claim under *Strickland*, a petitioner must demonstrate that his counsel's assistance was ob-

jectively unreasonable and resulted in a substantial risk of prejudice." *Brown v. Finnan*, 597 F.3d. 416, 419 (7th Cir. 2010). Under our "highly deferential" review of an attorney's performance, we presume that the attorney advised his client effectively. *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003). Only if the petitioner comes forward with "specific acts or omissions of his counsel that constitute ineffective assistance" will we then consider "whether these acts or omissions were made outside the wide range of professionally competent assistance." *Id.*

If we find that Hutchings was not sufficiently prejudiced, however, we need not address the adequacy of Wertz's representation. *Strickland*, 466 U.S. at 697; *United States v. Taylor*, 569 F.3d 742, 748 (7th Cir. 2009). To establish prejudice in the pleading context, the petitioner must prove that there is a reasonable probability that he would not have pled guilty absent his attorney's deficient conduct. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Morales v. Boatwright*, 580 F.3d 653, 663 (7th Cir. 2009). To make that showing, the petitioner must do more than simply allege "that he would have insisted on going to trial"; he must also come forward with objective evidence that he would not have pled guilty. *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005). Objective evidence includes the nature of the misinformation provided by the attorney to the petitioner and the history of plea negotiations. *See Julian v. Bartley*, 495 F.3d 487, 499 (7th Cir. 2007).

We find that Hutchings's ineffective assistance claim fails because he did not adequately show that he

would not have pled guilty even had his attorney fully explained to him that a Rule 35 motion to reduce his sentence was not guaranteed. Hutchings argues, however, that he has both objective and subjective evidence that he was prejudiced.

As subjective evidence of prejudice, Hutchings submits his testimony that he would have proceeded to trial absent Wertz's promise of a sentence reduction. The "'mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice.'" *Julian*, 495 F.3d at 499 (*quoting United States v. Fudge*, 325 F.3d 910, 924 (7th Cir. 2003)). But such a statement can support a finding of prejudice if combined with probative, objective evidence, such as "a history of the plea discussion[], and the type of mis-information" provided to a defendant about the sentencing consequences of pleading guilty. *See id.* at 500. Hutchings's statement that he would have proceeded to trial absent Wertz's guarantee is tempered significantly by the multitude of unsolicited letters he sent to the district court, admitting his guilt and expressing his desire to plead guilty.

Hutchings now argues that drafting those letters is entirely consistent with his version of events: of course he wanted to plead guilty as soon as possible if he was promised a sentence reduction one year later. But the evidence does not support Hutchings's position. Of particular note is at least one letter that Hutchings wrote to the district court requesting to plead guilty *before* he had ever met with Wertz. (R. at 54, p.1.) Hutchings could not have been motivated to plead guilty based on Wertz's alleged guarantee if at the time he wrote the letter

Wertz and Hutchings had never even met. Even if he was motivated to hurry the process along so that he could have his sentence reduced, there would be no reason to manufacture the explanations that he gave to the district court in the letters he drafted: he thought mounting a defense was useless and therefore did not want to delay his sentencing and return to prison. Hutchings's statement that he would have insisted on going to trial absent Wertz's alleged guarantee rings hollow when read in conjunction with expressions of Hutchings's intent to plead guilty.

We are unpersuaded by the subjective evidence that Hutchings would have pled guilty but for Wertz's guarantee of a sentence reduction. The objective evidence suggested by Hutchings is also unpersuasive. He points to the sentencing consequences he faced as objective evidence that he would have gone to trial absent Wertz's bad advice. Hutchings's choices were to go to trial, where if convicted he would have received a life sentence, or to plead guilty and receive a life sentence. Hutchings argues that it made no sense for him to plead guilty when doing so simply guaranteed a life sentence, no matter how minuscule his chances of acquittal at trial were. Pleading guilty would make sense, however, if—as Hutchings alleges—Wertz told him that his choices were actually to either go to trial and all but guarantee a life sentence without parole, or plead guilty, receive an initial life sentence, but then one year later receive a reduced sentence under Rule 35.

Hutchings's argument works neatly in the abstract, but it ignores at least one other key variable that a reason-

able person in Hutchings's shoes would have factored into his decision-making process. Hutchings was out on parole from Texas at the time he committed the felony drug crimes in Ohio and Illinois. As a result, Texas issued a parole violation warrant for Hutchings. Under Texas law, Hutchings could be required to serve the remainder of his ninety-nine-year sentence in prison, *see* Tex. Gov't Code Ann. § 508.156(e), which for Hutchings would effectively be a life sentence. Hutchings was clearly cognizant of the specter of serving a life sentence in Texas because he cited it in one of his letters to the district court as a reason why proceeding to trial would be "pointless." (R. at 49, p.1.) When viewed in their proper context, the sentencing consequences that Hutchings faced do not militate as strongly in favor of finding ineffective assistance of counsel as he might hope.

Hutchings relies heavily on two cases, *Moore v. Bryant*, 348 F.3d 238 (7th Cir. 2003), and *Julian v. Bartley*, 495 F.3d 487 (7th Cir. 2007).[3] Both involved attorneys giving incorrect sentencing advice at the pleading stage.

---

[3] After we heard oral arguments in this case, the Supreme Court decided *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). There, the Supreme Court held that an attorney provided ineffective assistance of counsel to his client by incorrectly telling him that he would not be removed if he pled guilty. *Id.* at 1483. The *Padilla* decision has no bearing on our decision in this case because we need not decide whether Wertz's performance was deficient to reach our conclusion that Hutchings was not prejudiced and therefore not entitled to habeas relief.

In *Moore*, the defendant pled guilty after his attorney told him he would receive ten years for pleading guilty or face twenty-two to twenty-seven years if convicted at trial; in reality, the defendant's exposure at trial would only have been twelve-and-a-half to fifteen years. 348 F.3d at 240. In *Julian*, the defendant opted to go to trial after his attorney told him he would receive twenty-three years if he pled guilty or face just seven years more if convicted at trial; in reality, the defendant faced a sentence of up to sixty years if convicted at trial. 495 F.3d at 489. In both cases, we granted the defendants' habeas petitions, finding that the attorneys provided ineffective assistance of counsel that prejudiced their clients. *Julian*, 495 F.3d at 498-500; *Moore*, 348 F.3d at 241-43. As objective evidence of prejudice, both courts determined that the attorneys' miscalculations, based on clearly erroneous readings of the applicable law, were "precisely the type of information that is likely to impact a plea decision." *Julian*, 495 F.3d at 498; *Moore*, 348 F.3d at 242-43.

We find *Julian* and *Moore* inapposite here. First, unlike the defendants in *Julian* and *Moore*, Hutchings was facing the very real possibility of spending the rest of his life in prison, even if he was acquitted at trial. At the very least, that possibility made Hutchings's decision less of an obvious choice than the defendants' decisions in *Julian* and *Moore*. Second, and importantly, there is no evidence that the defendants in *Julian* and *Moore* lied to the district court judge during the plea colloquy. In *Moore*, the state court relied on the plea colloquy to hold that the defendant had knowingly and voluntarily

entered the guilty plea and could therefore not complain later that his counsel's bad advice forced him to plead guilty. 348 F.3d at 243. On appeal, this court reversed because nothing in the plea colloquy would have alerted the defendant that the advice he received from his attorney was erroneous; therefore, the "sequence of questions did nothing to ameliorate the adverse impact of his counsel's misinformation." *Id.* Here, however, there was at least one question in the plea colloquy between the district court and Hutchings that should have given Hutchings at least pause for concern: the district court asked him whether there had been any promises made to him to induce him to plead guilty. Hutchings responded under oath that there were not, which directly contradicts his recent testimony that his attorney promised him a Rule 35 sentence reduction. Hutchings justifies his lie to the district court by arguing that the deal was a secret because the government and the court wanted to appear to be tough on crime. We find this after-the-fact explanation wholly insufficient to override the verity that presumptively attaches to a defendant's statements when entering a guilty plea. *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004).

When a district court conducts a Rule 11 colloquy, it is not putting on a show for the defendant, the public, or anybody else. "The purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing." *Id.* Because the court takes a criminal defendant's rights at a change-of-plea hearing very seriously, it is reasonable to expect, and demand, that the

criminal defendant do so as well. For that reason, a defendant is normally bound by the representations he makes to a court during the colloquy. *Id.* Justice would be ill-served, and the utility of the Rule 11 colloquy would be undermined, by allowing Hutchings to renege on his representation under oath to the district court that there were no promises made to him to induce his guilty plea. Absent a showing that his attorney personally directed him to hide the truth from the judge, we simply cannot accept Hutchings's explanation for lying to the court.

Hutchings has failed to make the minimum required showing that he would have pled guilty absent his attorney's deficient performance. Because we find that Hutchings has failed to establish that he was sufficiently prejudiced by his attorney's performance, we need not decide whether Wertz's performance was constitutionally deficient.

### B. Evidentiary Hearing

Hutchings also appeals the district court's decision to consider his petition without holding an evidentiary hearing. "The court should grant an evidentiary hearing on a § 2255 motion when the petitioner alleges facts that, if proven, would entitle him to relief." *Sandoval*, 574 F.3d at 850 (internal quotation marks omitted). However, the district court need not hold an evidentiary hearing "'where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.'" *Torzala v. United States*, 545 F.3d 517, 525 (7th Cir. 2008)

(*quoting Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004)). We review the district court's decision not to hold an evidentiary hearing for an abuse of discretion. *Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008).

The district court did not abuse its discretion by declining to hold an evidentiary hearing. To be sure, if Wertz guaranteed to Hutchings that the government would move to reduce his sentence if he pled guilty, that could support a finding that Wertz's performance was constitutionally deficient. Surprisingly, Wertz elected not to refute Hutchings's allegations that he provided ineffective assistance of counsel. Ordinarily an evidentiary hearing would be necessary to help lay before the district court all the relevant facts to determine what Wertz did or did not promise. However, an evidentiary hearing in this case was not necessary because the record before the district court, and now before us, conclusively shows that Hutchings was not prejudiced under *Strickland* and is therefore entitled to no relief.

### III. CONCLUSION

The district court's denial of Hutchings's petition for a writ of habeas corpus under § 2255 is AFFIRMED.