In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3430

JAMES R. TODD,

*Petitioner-Appellant*,

*v.*

KESS ROBERSON, Warden,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 14 C 50072 — **Frederick J. Kapala**, *Judge*.

ARGUED JUNE 3, 2016 — DECIDED JULY 1, 2016

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. In 2010 James R. Todd, having pleaded guilty in an Illinois state court to a drug offense (he had sold 22.1 grams of cocaine to an undercover police officer), and having a criminal record that included five prison sentences totaling 22 years (though he hadn't actually served all that time), was sentenced to 25 years in prison for selling cocaine. He appealed on the ground that his lawyer at trial had been ineffective because he'd induced him to plead

guilty by telling him the government would recommend no more than a 10-year sentence. The Illinois appellate court rejected his argument and the Illinois Supreme Court denied him leave to appeal.

Four years later he sought habeas corpus in federal district court on the ground that he'd pressed unsuccessfully in his state court appeal. The district court ruled against him, and he has appealed to us.

Before Todd had pleaded guilty in the state criminal proceeding, the prosecutor had told his lawyer, Daniel Radakovich, that if Todd agreed to plead guilty the state would recommend an 18-year prison sentence plus fines. In response Radakovich had asked the prosecutor to consider recommending a 10-year sentence—to which the prosecutor had replied that he wouldn't be doing his job if he recommended a sentence shorter than 15 years.

Just days before the plea hearing the prosecutor wrote Radakovich that it was his (the prosecutor's) understanding that Todd would enter an "open plea" of guilty—that is, a plea not conditioned on sentence length—and that in return the government would drop another charge against Todd and, pending sentencing, reduce his $250,000 bond—which he could not meet—to $20,000, subject to certain conditions, such as that he submit to drug testing at least twice a week.

An attorney named Thomas Murray stood in for Radakovich at the plea hearing, at which Todd entered an open plea of guilty and acknowledged that he could be sentenced to anywhere between 6 and 60 years in prison and fined as much as $500,000. The judge asked Todd whether any promises had been made to him other than that his bond would

be reduced and another pending charge against him dropped, and he said "no."

The day before Todd was to be sentenced, Radakovich had written the prosecutor asking "would the State be interested in a sentence lower than the ten (10) year sentence that has been negotiated in consideration for a higher fine in this matter?" The prosecutor, not acknowledging any such negotiation, responded that Todd's open plea had made him subject to a prison sentence of anywhere between 6 and 60 years. Radakovich, replying to the prosecutor, did not disagree but merely asked: "What is your position re: Sentencing, fine, etc.?" The prosecutor replied that he hadn't yet read the probation service's presentence report but thought "my recommendation will be for a significant number of years."

The sentencing hearing was delayed, and during the interim Todd moved to enforce what he claimed was the state's agreement to a "10-year cap" on its sentencing recommendation. The judge (a different judge from the one who had accepted Todd's guilty plea) held an evidentiary hearing at which Radakovich, who had withdrawn as a lawyer for Todd so that he could become a witness for him, testified that it was his recollection that in a phone call with the prosecutor more than two years earlier he had proposed that Todd's "sentence would be, although not firmly decided or agreed upon, … capped at ten years," and that it was his understanding that the prosecutor had agreed. Yet when asked on cross-examination to explain "with specificity and completeness, each and every thing that [the prosecutor] said that he would do in exchange for that plea of guilty," Radakovich did not mention any 10-year cap, only "a signif-

icant lowering of Mr. Todd's bond … and [ ] we would see what the sentence ultimately would be." He acknowledged that the prosecutor had not stated agreement to a 10-year sentencing cap.

The judge concluded that there had never been such an agreement and proceeded to sentence Todd to 25 years (as we noted at the beginning of this opinion) on the basis of his "significant history of criminal activity" and "the significant amount of cocaine that was sold here."

This wasn't the end of the state-court proceeding. In response to a motion by Todd to reconsider the sentence or vacate the guilty plea, the state court convened a further evidentiary hearing, at which lawyer Murray, who had stood in for Radakovich at the plea hearing, testified that Radakovich had not mentioned a 10-year cap and that he (Murray) had told Todd that he would be "pleading open." Todd testified that the day before his plea hearing Radakovich had told him that "him [Radakovich] and [the prosecutor] had a plea negotiation of a ten year cap" and that he (Todd) "would have never pled guilty to an open six to 60"—though of course he *had* pleaded guilty to exactly that range. And on cross-examination he admitted that he'd agreed to "pleading guilty open," that he knew what that meant, that he'd heard the judge explain that the possible penalties at the plea hearing were from "6 years to 60 years in the Department of Corrections … and a possible fine of up to $500,000," and that he'd been promised nothing in exchange for his plea aside from the concessions relating to the bond and the dismissal of another charge.

Unsurprisingly the state trial judge found that the 10-year cap was "a fantasy … not based in any fact whatsoev-

er." He also found that Todd had not been confused about the terms of the plea agreement—that there was "absolutely no basis whatsoever [ ] to support a finding that [Todd] did not make a knowing and voluntary plea." The judge also found "no evidence to suggest, whatsoever, that Mr. Radakovich [had been] ineffective in any way." This may seem a surprising finding, given the "fantasy" character of the 10-year cap, but Radakovich had conceded that the prosecutor had never agreed to a 10-year cap. And Murray, who had represented Todd at the plea hearing, had never heard of the cap and Todd had acknowledged not mentioning it in any of his court appearances, even though the court had made clear that he was facing a maximum sentence not of 10 but of 60 years.

There is no doubt that Radakovich had fabricated (we don't know whether deliberately or because of a failure of memory) the 10-year sentence cap; he confused his proposing it to the prosecutor with the prosecutor's accepting it. If as a consequence of Radakovich's fabrication Todd had pleaded guilty rather than invoke his right to a trial at which he might conceivably (if improbably) have been acquitted, he might have a claim to have been harmed by ineffective assistance of counsel and to be entitled therefore to a do-over of his state-court proceeding that had culminated in the 25-year sentence. See *Strickland v. Washington*, 466 U.S. 668 (1984); *Hill v. Lockhart*, 474 U.S. 52 (1985); cf. 28 U.S.C. § 2254(d). But his briefs nowhere mention the possibility of an acquittal, nor has he ever presented evidence that he would have gone to trial had it not been for his belief (if he did believe) that by pleading guilty he would get his sentence capped at 10 years. It's true that he'd said that he "would have never pled guilty to an open six to 60," and if

he hadn't pleaded guilty he would have gone to trial, but his statement was bluster: he *did* "plead guilty to an open six to 60."

Even if we assume that he believed in the 10-year cap, he either lied or was confused in replying "no" when asked by the judge whether any promises had been made to him other than that his bond would be reduced and the other charge against him dropped. If he lied, he has no right to change his story and get a trial. If he was confused and still believed there was a sentencing cap, the trial judge disabused him of his mistake by telling him he could be sentenced to any-where from 6 to 60 years even if he pleaded guilty—which is what he did, with his eyes open. See *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010).

AFFIRMED